# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re:<br><br>EASTERN COLORADO SEEDS LLC,<br>EIN: 26-0001466<br><br>_____ Debtor. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Case No. 25-_____<br>Chapter 11 |

## DISCLOSURE REGARDING RECEIVERS

In a chapter 11 reorganization case, the following information is required pursuant to L.B.R. 1007-7.1:

Check applicable box:

[ ]    No receiver is in possession of debtor's property

[✓]    A receiver is in possession of all or part of the debtor's property;

> Identification (by address or legal description) of properties: See attached.
> Name of Creditor: American AgCredit, FLCA and American AgCredit, PCA
> Name, Address and Telephone Number of Receiver: Michael L. Staheli on behalf of Cordes & Company, LLP, 7979 E. Tufts Avenue, Suite 820, Denver, CO 80237, (303) 796-1130
> Attorney for Receiver: N/A
> Name, Address and Telephone Number of Attorney: N/A
> Date of Appointment of Receiver: December 16, 2024
> Court Appointing Receiver and Case No.: Case No. 2024CV30026 in the District Court for Kit Carson County, Colorado

See attachments for additional information.

EASTERN COLORADO SEEDS LLC

Dated: January 14, 2025.    By: _____
                                Clayton Russel Smith

Dated: January 14, 2025

Respectfully submitted,

**ONSAGER | FLETCHER | JOHNSON | PALMER, LLC**

*s/ Gabrielle G. Palmer*
Andrew D. Johnson, #36879
Alice A. White, #14537
Gabrielle G. Palmer, #48948
600 17th Street, Suite 425N
Denver, Colorado 80202
Ph: (720) 457-7059
ajohnson@OFJlaw.com
gpalmer@OFJlaw.com

*Proposed Counsel for Debtor*

| | |
|---|---|
| DISTRICT COURT, KIT CARSON COUNTY, COLORADO | DATE FILED<br>December 16, 2024 11:29 AM<br>CASE NUMBER: 2024CV30026 |
| AMERICAN AGCREDIT, FLCA, a federal land bank association,<br>AMERICAN AGCREDIT, PCA, a production credit association,<br><br>     Plaintiffs,<br><br>v.<br><br>EASTERN COLORADO SEEDS, LLC, a Colorado limited liability company,<br>CLAYTON R. SMITH, a Colorado resident,<br>CHRISTINE L. SMITH, a Colorado resident,<br>ECS FARMS, LLC, a Colorado limited liability company,<br>PINNACOL HOLDINGS LLC, a Colorado limited liability company,<br>HIGH PLAINS AG SERVICE, INC., a Colorado corporation,<br><br>     Defendants. | ▲  COURT USE ONLY  ▲<br><br>Case No.:<br><br>Division: |
| **ORDER APPOINTING RECEIVER** | |

     The Court, having considered the Complaint, the Motion for Appointment of Receiver *Ex Parte*, and Exhibits A through D thereto, as well as the Declaration in Support of the Appointment of Receiver *Ex Parte* executed by Christopher Hoffman of American AgCredit, FLCA ("AAC FLCA") and American AgCredit, PCA ("AAC PCA") (AAC FLCA and AAC PCA collectively, including with their parents, subsidiaries, and affiliates listed below, the "Lender"), regarding Eastern Colorado Seeds, LLC, a Colorado limited liability company ("Eastern Colorado Seeds"), ECS Farms, LLC, a Colorado limited liability company ("ECS Farms"), and Clayton R. Smith ("Clayton") and Christine L. Smith  ("Christine") (Eastern Colorado Seeds, ECS Farms, LLC, Clayton, and Christine collectively the "Borrowers"), also with Pinnacol Holdings LLC, a Colorado limited liability company ("Pinnacol"), and High Plains Ag Service, Inc., a Colorado corporation ("High Plains"), as additional guarantors (Pinnacol and High Plains collectively the "Additional Guarantors"), as more fully described in the loan documents listed herein, and having reviewed the file and being otherwise duly advised in the premises, hereby finds that:

1.      This Court has jurisdiction and venue is proper in this judicial district.

2.      As more fully stated in the Complaint, the Motion for Appointment of Receiver *Ex Parte*, and Exhibits A through D thereto, Lender made certain extensions of credit to the Borrowers on the terms and conditions set forth in the Loan Documents referenced herein.

3.      As more fully stated in the Complaint, the Motion for Appointment of Receiver E*x Parte* and Exhibits A through D attached thereto, and the Declaration in Support of the Appointment of Receiver *Ex Parte* executed by Christopher Hoffman of Lender, Lender noticed the Borrowers of the Existing Defaults through the correspondence attached and attached hereto as Exhibit B ("Notice of Default") and through the Forbearance Agreement executed September 4, 2024, by Borrowers and Additional Guarantors, attached to the Complaint as Exhibit C (the "Forbearance Agreement").

4.      As stated in the Forbearance Agreement, in addition to the Outstanding Principal and Interest due under the Loan Documents, the interest after default continues to accrue at the rates as stated in the Loan Documents, and Lender has and will continue to incur attorney's fees and expenses, and all such sums are and shall be due and payable by the Borrowers and Additional Guarantors to the Lender under the terms of the Loan Documents (collectively, the "Indebtedness").

5.      As stated in the Notice of Default and the Forbearance Agreement, both of which are fully incorporated herein by reference, the Borrowers and Additional Guarantors have been in and remain in a state of default under the terms and conditions of the Loan Documents.

6.      Further, as stated in the Complaint, the Motion for Appointment of Receiver *Ex Parte*, and the Declaration in Support of the Appointment of Receiver *Ex Parte* executed by Christopher Hoffman, the Borrowers and Additional Guarantors have been in and remain in a state of default under the terms and conditions of the Forbearance Agreement.

7.      The Borrowers and Additional Guarantors consented in the Loan Documents to the appointment of a receiver as requested herein, without notice or Lender being required to prove any further allegations, as follows in the Master Loan and Membership Agreements, at Sections 4.4, and the Security Agreement, at Sections 6.1 and 6.6, within the Loan Document, as follows:

4.4     Rights and Remedies, Late Charges, Increased Interest.  Upon the occurrence of any Event of Default, Lender may, at its option and without notice to Borrower, declare all or any part of the Indebtedness owed to Lender to be immediately due and payable, without the necessity of any prior recourse to any Collateral.  Lender shall have all rights, powers, and remedies available under this Master Agreement and under any Loan Document including without limitation any security agreement, mortgage, deed of trust, guaranty, or any other document between Borrower and Lender relating to the Indebtedness owed, or accorded by law or equity, including the right to foreclose on any and all Collateral, all of which rights and remedies shall be cumulative and not exclusive.  All rights, powers, and remedies of Lender may be exercised at any time by Lender and from time to time after the occurrence of an event of default.  All rights, powers, and remedies of Lender in connection with any Note and any loan document are cumulative and not exclusive and shall be in addition to any other rights, powers, or remedies provided by law or equity.  Lender may enforce any security interest or lien given or provided for under any Note or any other document in such manner and in such order, as to all or any part of the collateral as Lender, in its sole judgment, deems necessary or appropriate, and Borrower, to the extent Borrower can, waives any and all rights, obligations, or defenses now or hereafter established by law relating to the foregoing.  All rights, powers and remedies may be exercised at any time and from time to time after any Event of Default.  The security documents used by Lender provide that advances made by Lender shall become part of the principal evidenced by any Note, and also state additional conditions under which any Note may be accelerated and become immediately due and payable and will become subject to interest and acceleration or default interest.

6.   **Rights and Remedies**.  Upon the occurrence of an Event of Default or the termination of this Agreement, Lender shall have, in addition to all of the rights and remedies of a secured party under the Uniform Commercial Code and applicable law, all of its rights and remedies under this Agreement, which rights and remedies shall be cumulative and shall include the following:

6.1     Lender may, without notice or demand, declare all or any portion of the Indebtedness to be immediately due and payable.

6.2     Lender may enforce its security interest in and its rights to any or all Collateral pursuant to the Uniform Commercial Code and any applicable law.

6.3     Lender may require Debtor to assemble the Collateral and all books and records pertaining thereto and make them available to Lender at a place designated by Lender.

6.4     Lender may enter upon the premises of Debtor and take possession of the Collateral and of the books and records pertaining thereto.

6.5     Lender may use, assemble, complete, produce, grow, raise, develop, harvest, process, market or operate the Collateral to the extent that it deems appropriate for the purpose of caring for, preserving, or disposing of the Collateral or for any other purpose which Lender deems appropriate.  Lender shall have no obligation to Debtor to maintain or preserve the rights of Debtor in and to the Collateral as against the claims of third parties while the Collateral is in the possession, custody, or control of Lender.  Lender has no obligation to clean-up or otherwise prepare the Collateral for sale.

6.6     Lender may seek the appointment of a receiver, trustee, examiner, or other similar official to take possession of the Collateral and to enforce any of Lender's remedies with respect thereto.

8.      Further, the Borrowers and Additional Guarantors previously consented and agreed that the Borrowers and Additional Guarantors knowingly, willingly, and intelligently released any rights, obligations, or defenses as stated above.

9.      Further, the Borrowers and Additional Guarantors consented in the Forbearance Agreement to the Lender's ability to seek the appointment of a receiver *ex parte* as set forth in Section 4.6 of the Forbearance Agreement, attached as Exhibit C to the Complaint, and as follows:

3

THE BORROWERS AND THE ADDITIONAL GUARANTORS CONSENT TO THE LENDER'S ABILITY TO SEEK THE APPOINTMENT OF A RECEIVER EX PARTE OVER ANY AND ALL LEGAL AND EQUITABLE INTERESTS OF THE BORROWERS AND ADDITIONAL GUARANTORS, GENERALLY OR IN A LIMITED FASHION, AND CONSENT AND AGREE THAT THE LENDER SHALL BE PERMITTED TO EXERCISE ITS SOLE DISCRETION IN SEEKING THE SCOPE OF, ORDERS PERTAINING TO, AND APPOINTMENT OF A RECEIVER EX PARTE, INCLUDING PER C.R.C.P 66. TO THE EXTENT PERMITTED BY APPLICABLE LAW, AND THE BORROWERS AND THE ADDITIONAL GUARANTORS CONSENT TO THE LENDER PRESENTING THIS AGREEMENT IN ANY COURT WITH THE FULL EFFECT OF A STIPULATION, WITHOUT FURTHER EXECUTION OR ACTION OF ANY KIND. THE BORROWERS AND THE ADDITIONAL GUARANTORS, AFTER HAVING THE OPPORTUNITY TO CONSULT WITH COUNSEL OF THEIR OWN CHOOSING, KNOWINGLY AND INTELLIGENTLY WAIVE AND RELEASE ANY AND ALL RIGHTS, CLAIMS, OR DEFENSES THE BORROWERS AND THE ADDITIONAL GUARANTORS HAVE REGARDING WHETHER THE LENDER CAN UNILATERALLY OBTAIN THE APPOINTMENT OF A RECEIVER, INCLUDING EX PARTE, OVER ANY AND ALL LEGAL AND EQUITABLE INTERESTS OF THE BORROWERS AND THE ADDITIONAL GUARANTORS, IN A GENERAL OR LIMITED FASHION.

10.     Through the Forbearance Agreement, including in Section 5 and Section 6 thereof, the Borrowers and Additional Guarantors further acknowledged and agreed that: (i) the Borrowers and Additional Guarantors have no defenses of any nature whatsoever to collection of the Indebtedness or to the enforcement of the terms of the Loan Documents; (ii) the Borrowers and Additional Guarantors have no claims, counterclaims, or offsets against the Lender or its agents or affiliates relating to or in connection with the Loan Documents; (iii) the Borrowers and the Additional Guarantors have no defenses, claims, counterclaims, or offsets to collection of the Indebtedness or enforcement of the terms of the Loan Documents, including, but not limited to, statutes of limitation and equitable defenses such as laches, waiver, or estoppel; (iv) the Lender has performed all its obligations under the Loan Documents; and (v) the Loan Documents, as modified by the Forbearance Agreement, are enforceable against the Borrowers and Additional Guarantors pursuant to their terms.

11.     The Lender and the Borrowers and Additional Guarantors, in the Loan Documents, including in 13.10 of the Master Loan and Membership Agreements, contractually agreed to the Lender having the unilateral ability to select this Court as the venue:

        13.10   Choice of Forum. Any dispute that arises under or relates to this Master Agreement or any Loan Document (whether contract, tort, or both) shall be resolved in a forum selected by the applicable Lender. Unless otherwise required by law or requirements for enforcing of rights, the forum in which any branch office of Lender is located shall be deemed appropriate.

CORE/3500155.0064/194630277.3

Venue is proper in Kit Carson County pursuant to C.R.C.P. 98(c)(1), including as the Borrowers and Additional Guarantors contractually acquiesced, and this Court has jurisdiction over the claims asserted in this action pursuant to C.R.S. § 13-1-124.

12.    Any and all assets, including any land, improvements, personal property, fixtures, accounts receivable, accounts, personal property, claims and causes of action against third parties, revenues, royalties, issues, profits, and income thereof, including those assets as follows, may be referred to as the "Collateral," more fully defined in the Loan Documents, pledged by the Borrowers to the Lender and pledged by the Additional Guarantors to the Lender as more fully stated in the Loan Documents, with Lender being the first-priority, perfected, secured creditor of the Borrowers and Additional Guarantors as more fully stated in the Loan Documents and the Forbearance Agreement, secured in all Collateral, including but not limited to the following:

| Addresses; Account Nos. | Description | Item No. | Titled Owner | Acres |
|---|---|---|---|---|
| (Adjacent to Circle Pivot Land)<br><br>19700 US Hwy 385 Burlington, CO 80807 | Tract A:<br>A tract of land situate in the Northwest Quarter and the Northeast Quarter of Section 2, Township 9 South, Range 44 West of the 6th Principal Meridian, Kit Carson County, Colorado and being more particularly described as follows:<br>Commencing at the North 1/4 Corner of said Section 2; Thence S 02°34'37" E along the easterly line of said Northwest Quarter of said Section 2 a distance of 35.04 feet to a point on the southerly right-of-way line of U.S. Highway 24 and the True Point of Beginning; Thence N 87°25'31" E along said southerly right-of-way a distance of 505.10 feet; Thence S 02°44'39" E a distance of 147.34 feet to a point of non-tangent curvature; Thence along the arc of a curve to the left a distance of 867.74 feet, said curve having a central angle of 44°23'26", a radius of 1120.00 feet, the chord of which bears S 37°57'57" W a distance of 846.20 feet; Thence S 87°22'58" W a distance of 68.37 feet to a point of non-tangent curvature; Thence along the arc of a curve to the left a distance of 901.18 feet, said curve have a central angle of 45°53'48", a radius of 1125.00 feet, the chord of which bears N 43°42'11" W a distance of 877.28 feet; Thence N 02°37'02" W a distance of 128.30 feet to a point on said southerly right-of-way of U.S. Highway 24; Thence N 87°18'44" E along said southerly right-of-way a distance of 689.98 feet to the point of beginning, described parcel containing 10.96 acres more or less, as shown on that Survey Plat recorded June 17, 2011 at Document No. 557777 and in Plat Book 9 at Page 1 of the Kit Carson County, Colorado records.<br>and<br><br>A tract of land situate and being in the Northwest Quarter (NW4) of Section Thirty (30), Township Eight (8) South, Range Forty-three (43) West of the Sixth Principal Meridian, Kit Carson County, Colorado, more particularly described as follows: Beginning at the Northwest corner of said Section Thirty (30); Thence South along the West Section line of said Section Thirty (30), a distance of 1320.00 Feet to the true point of beginning; Thence South along the West Section line 301.00 Feet to a point; Thence East parallel to the North line of said Section Thirty (30), a distance of 440.00 Feet to a point; Thence North parallel to the West line of said Section Thirty (30), a distance of 301.00 Feet to a point; Thence West parallel to the North line of said Section Thirty (30), a distance of 440.00 feet, more or less, to the point of beginning.<br><br>Together with all water rights, wells and equipment, ditch and ditch rights appurtenant thereto, used for the irrigation of said land including, but not limited to Well No. 1, Permit No. 4561-F, adjudicated 8/12/1963, in the State of Colorado, at a pumping rate not to exceed 1,300 GPM to irrigate a maximum of 200 acres; and a security interest in all wells, pumps, motors, equipment, and sprinkler systems used for irrigation of the land described above including all future additions to, replacement of or substitutions for. | 1 | Eastern Colorado Seeds, LLC | 10.96<br><br>3.4 |

| | | | | |
|---|---|---|---|---|
| (Circle Pivot Land) | Tract B:<br>The North Half (N½) of Section 2, Township 9 South, Range 44 West of the 6th Principal Meridian of Kit Carson County, Colorado,<br><br>LESS AND EXCEPT a tract of land located in the Northwest Quarter (NW¼) of Section Two (2), Township Nine (9) South, Range Forty-four (44) West of the Sixth Principal Meridian, more particularly described as follows: Commencing at the Northwest corner of the Northwest Quarter (NW¼) of Section 2, Township 9 South, Range 44 West of the Sixth Principal Meridian, Thence South along the section line between Sections Two (2) and Three (3) a distance of 40 Feet and East parallel with the section line between Sections Thirty-five (35) and Two (2) a distance of 30 Feet to the true point of beginning; Thence East parallel with the section line between Sections Thirty-five (35) and Two (2) a distance of 435.6 feet; Thence South parallel with the section line between Sections Two (2) and Three (3) a distance of 300 feet; Thence West parallel with the section line between Sections Thirty-five (35) and Two (2) a distance of 435.6 Feet; Thence North parallel with the section line between Sections Two (2) and Three (3), a distance of 300.0 Feet to the point of beginning.<br><br>LESS AND EXCEPT a tract of land located in the Northwest Quarter (NW¼) of Section Two (2), Township Nine (9) South, Range Forty-four (44) West of the Sixth Principal Meridian, more particularly described as follows: Commencing at the Northwest corner of the Northwest Quarter (NW¼) of Section 2, Township 9 South, Range 44 West of the Sixth Principal Meridian, Kit Carson County, Colorado; thence South along the Section line between Sections 2 and 3, a distance of 40 feet and East parallel with the Section line between Sections 35 and 2, a distance of 465.6 feet to the true point of beginning; thence East parallel with the Section Line between Sections 35 and 2, a distance of 290.4 feet; thence South parallel with the Section Line between Sections 2 and 3, a distance of 300 feet; thence West parallel with the Section Line between Sections 35 and 2, a distance of 290.4 feet; thence North parallel with the Section Line between Sections 2 and 3, a distance of 300 feet to the point of beginning.<br><br>LESS AND EXCEPT a tract of land situate in the Northwest Quarter and the Northeast Quarter of Section 2, Township 9 South,<br><br>Range 44 West of the 6th Principal Meridian, Kit Carson County, Colorado and being more particularly described as follows: Commencing at the North 1/4 Corner of said Section 2; Thence S 02°34'37" E along the easterly line of said Northwest Quarter of said Section 2 a distance of 35.04 feet to a point on the southerly right-of-way line of U.S. Highway 24 and the True Point of Beginning; Thence N 87°25'31" E along said southerly right-of-way a distance of 505.10 feet; Thence S 02°44'39" E a distance of 147.34 feet to a point of non-tangent curvature; Thence along the arc of a curve to the left a distance of 867.74 feet, said curve having a central angle of 44°23'28", a radius of 1120.00 feet, the chord of which bears S 37°57'57" W a distance of 846.20 feet; Thence S 87°22'58" W a distance of 68.37 feet to a point of non-tangent curvature; Thence along the arc of a curve to the left a distance of 901.18 feet, said curve have a central angle of 45°53'48", a radius of 1125.00 feet, the chord of which bears N 43°42'11" W a distance of 877.28 feet; Thence N 02°37'02" W a distance of 128.30 feet to a point on said southerly right-of-way of U.S. Highway 24; Thence N 87°18'44" E along said southerly right-of-way a distance of 689.98 feet to the point of beginning, described parcel containing 10.96 acres more or less, as shown on that Survey Plat recorded June 17, 2011 at Document No. 557777 and in Plat Book 9 at Page 1 of the Kit Carson County, Colorado records.<br><br>LESS AND EXCEPT a tract of land located in the Northeast Quarter (NE4) of Section Two (2), Township Nine (9) South, Range Forty-four (44) West of the Sixth Principal Meridian, Kit Carson County, Colorado, more particularly described as follows: Commencing at the Southeast corner of said Northeast Quarter (NE4) of Section 2, Township 9 South, Range 44 West of the Sixth Principal Meridian; Thence North 475.0 feet along said Section line to a point; Thence West at an angle of 90° a distance of 100.0 feet; Thence N 03°02' E a distance of 676.9 feet to a point which is 50.0 feet West of the East line of the NE4 of said Section 2; Thence N 01°13' W a distance of 498.1 feet, (which is also the NE corner of a tract of land described in a warranty deed recorded in Book 614 at Page 816, Kit Carson County, Colorado records) as the point of beginning; Thence West at an angle of 90° and along the North line of that tract of land described in a warranty deed recorded in Book 614 at Page 816, a distance of 600.0 feet, to a point; Thence North at an angle of 90° to a point on the South right-of-way line of U.S. Highway No. 24; Thence East along the South right-of-way line of U.S. Highway No. 24 to a point 50.0 feet West of the East line of the NE4 of said Section 2, a distance of 600.0 feet, more or less. Thence S 01°13' E along the West right-of-way line of U.S. Hwy 385 to the true point of beginning, Kit Carson County, Colorado.<br><br>LESS AND EXCEPT a tract of land in the Northeast Quarter of Section 2, Township 9 South, Range 44 West of the 6th Principal Meridian, Kit Carson County, Colorado more particularly described as:<br>Beginning at the Southeast Corner of the Northeast Quarter of Section 2, Township 9 South, Range 44 West of the 6th Principal Meridian, Thence North 475 along the Section line, Thence West at an angle of 90° a distance of 100 feet, Thence N 03°02' E a distance of 676.9 feet to a point which is 50 feet West of the East line of the Northeast Quarter of Section 2; Thence N 01°13' W a distance of 248.1 feet to the True Point of Beginning; Thence N 01°13' W a distance of 250 feet; Thence West at an angle of 90° a distance of 300 feet; Thence South at an angle of 90° a distance of 250 feet; Thence East at an angle of 90° a distance of 300 feet to the True Point of Beginning.<br><br>LESS AND EXCEPT a tract of land located in the Northeast Quarter (NE¼) of Section Two (2), Township Nine (9) South, Range Forty-four (44) West of the 6th P.M., Kit Carson County, Colorado, more particularly described as follows: Beginning at the Southeast Corner of said Northeast Quarter (NE¼) of Section Two (2), described above, thence South along the section line a distance of 475.00 feet; thence West at an angle of 90° a distance of 100 feet to the point of beginning; thence North 3'02' East a distance of 678.9 feet to a point which is 50 feet West of the East boundary line of said Northeast Quarter (NE¼) of Section Two (2); thence North 1°13' West a distance of 248.1 feet; thence South 88°47' West a distance of 300 feet; thence South 1°13' East a distance of 248.1 feet; thence South 3'02' West a distance of 745.6 feet to the North boundary line of the right-of-way of Interstate Highway No. 70; thence North 76°07' East a distance of 312.7 feet along said right-of-way boundary line to the point of beginning. | 2 | Clayton R. Smith and Christine L. Smith | 265 |

CORE/3500155.0064/194630277.3

| | | | | |
|---|---|---|---|---|
| 1235 N. Dumas Avenue Dumas, TX 79029<br><br>1151 N. Dumas Avenue Dumas, TX 79029 | Tract 1:<br><br>A parcel of land out of the west one half of survey 279, Block 44, H. & T. C. Railroad Survey, Moore County, Texas described as follows.<br><br>Commencing at a point 30.0' south of the northwest corner of Survey 279.<br><br>Thence: S. 89° 32' 00" E. a distance of 1143.0' to a point in the west R.O.W. line of U.S. Highway 287.<br><br>Thence: S 08° 29' 00" E. along said R.O.W. line a distance of 500.0' to a point.<br><br>Thence: N. 89° 36' 43" W. a distance of 387.34' to a 1/2" rebar set for the northeast corner and point beginning this tract.<br><br>Thence: S. 00° 30' 50" W. a distance of 580.3' to a 1/2" rebar set for the southeast corner this tract.<br><br>Thence: N. 89° 36' 43" W. a distance of 621.95' to a 1/2" rebar set in the east R.O.W. line of Burlington Northern & Santa Fe Railroad for the southwest corner this tract.<br><br>Thence: N. 00° 30' 50" E. along said R.O.W. line a distance of 580.30' to a 1/2" rebar set for the northwest corner this tract.<br><br>Thence: S. 89° 36' 43" E. a distance of 621.95' to the point of beginning containing 8.00 acres of land more or less.<br><br>Tract 2:<br><br>A parcel of land out of the west one half of Survey 279, Block 44, H. & T. C. Railroad Company Survey, Moore County, Texas described as follows.<br><br>Commencing at a point 30.0' south of the northwest corner of Survey 279.<br><br>THENCE: S. 89° 32' 00" E. a distance of 1143.0' to a point in the west R.O.W. line of U. S. Highway 287.<br><br>THENCE: S. 08° 29' 00" E. along said R.O.W. line a distance of 1067.0' to a 1/2" rebar set for the northeast corner and point beginning this tract.<br><br>THENCE: N.89° 37' 35" W. a distance of 928.0' to a 1" pipe found for the northwest corner this tract.<br><br>THENCE: S. 00° 31' 00" W. a distance of 197.3' to a 1" pipe found for the southwest corner this tract.<br><br>THENCE: S. 89° 36' 27" E. a distance of 959.3' to a 1/2" rebar set for the southeast corner this tract.<br><br>THENCE: N. 08° 29' 00" W. along the west R.O.W. line of U. S. Highway 287 a distance of 200.0' to the point of beginning containing 4.28 acre of land more or less. | 3 | Pinnacol Holdings LLC | 12.28 |
| 5136 N. Prince Street Clovis, NM 88101 | Lot Twelve (12) less the East 20.10 Feet, NORTH CLOVIS COMMERCIAL PARK, Curry County, New Mexico, as shown by the official recorded plat thereof | 4 | Eastern Colorado Seeds, LLC | 1.63 |

     13.     As of the date of the Complaint, the Motion for Appointment of Receiver *Ex Parte* and Exhibits A through D thereto, and the Declaration in Support of the Appointment of Receiver *Ex Parte* executed by Christopher Hoffman of the Lender, the Borrowers and Additional Guarantors have not cured the breaches alleged in the Complaint.

7

14.     The amount remaining owed by the Borrowers and Additional Guarantors to the Lender due to the breaches by the Borrowers and Additional Guarantors is $16,917,219.55 as of November 30, 2024, exclusive of attorney's fees, the performance fee, and other amounts, as also generally confirmed in the Forbearance Agreement. Interest and other costs and expenses, including attorney's fees, continue to accrue.

15.     Accordingly, based upon the facts as stated above and for the reasons delineated above, the Court finds that the Lender has established the right to the appointment of a receiver to manage the Collateral, including as more fully ordered below, and including the Borrower and Additional Guarantor entities and their *res* and the *res* of the individual Borrowers and Additional Guarantors. *See Oman v. Morris*, 471 P.2d 430, 432 (Colo. App. 1970) ("The appointment of a receiver is normally addressed to the sound discretion of the trial court."  "Where [a defendant] fail[s] to object [to appointment of a receiver], she is deemed to have acquiesced in the court's action."); C.R.C.P. 66(a)(2) (a receiver may be appointed "by or after judgment, to dispose of the property according to the judgment . . . ."); C.R.C.P. 66(a)(3) (alternatively, the Court can appoint a receiver "in other cases where proper and in accordance with established principles of equity.")

16.     Further and specifically, where a contract, such as the Loan Documents, waives the adequacy of security requirement that states that the Court may appoint a receiver "without notice" to the borrower, the Court will honor the contract and appoint the receiver *ex parte*. *GE Life & Annuity Assur. Co. v. Fort Collins Assemblage, Ltd.,* 53 P.3d 703, 705 (Colo. App. 2001); *see also Bank of America Nat'l Trust & Sav. Ass'n v. Denver Hotel Ass'n Ltd. Partnership*, 830 P.2d 1138, 1139-40 (Colo. App. 1992) (appointing receiver *ex parte* when deed of trust contained a waiver of statutory requirements and allowed lender to have a receiver appointed "without notice.")

17.     The Court further finds that the proposed receiver, Cordes & Company, LLP, is qualified to be appointed as Receiver (defined below), in this receivership.

**IT IS THEREFORE ORDERED THAT:**

18.     Cordes & Company, LLP is hereby appointed receiver (the "Receiver") of the Collateral, including the entity Borrowers and entity Additional Guarantors and their *res*, and the *res* of the individual Borrowers and Additional Guarantors, and shall forthwith take physical possession of, manage, operate, and protect the Collateral, wherever said Collateral is located.

19.     The Receiver shall pay itself as compensation for its services as Receiver at the rates published in Exhibit E to the Motion for Appointment of a Receiver *Ex Parte*. On a basis no more frequently than monthly, the Receiver may both compensate himself for his services performed as a receiver and reimburse himself for reasonable and customary expenses incurred, all without further application to the Court.

20.     This is a limited receivership with the Receiver's duties as stated herein. This is not a general receivership. The Receiver is not responsible for investigating, prosecuting, or defending potential claims against the Borrowers or Additional Guarantors or the Borrowers' or Additional Guarantors' officers, directors, shareholders, members, managers, or employees, evaluating

whether the Borrowers or Additional Guarantors should file or continue in a bankruptcy, or defending against any unsecured claims occurring or incurred prior to its appointment or claims or bills incurred by the Borrowers or Additional Guarantors, or for investigating or participating (as a plaintiff, defendant, or otherwise) in any shareholder litigation involving the Borrowers and/or the Additional Guarantors and/or its or their current or former officers, directors, shareholders, members, managers, or employees.

21.     The Receiver shall have the powers and authority described below, which may be exercised without further order of the Court:

a.      To enter on and take possession and control of the Collateral, including but not limited to, all revenues, accounts receivable, royalties, issues, profits, contract deposits, rents, income, issues, rental payments, lease payments, rent rolls, books, records, bank accounts, checks, drafts, notes, accounts payable, other accounting information, records, contracts, claims, including but not limited to claims against third-parties arising from the Collateral, leases, files, furniture, certificates and licenses, fixtures, appliances, equipment, supplies, blueprints, building permits, soil reports, engineering reports, and inspection reports, to the exclusion of all other parties except as otherwise determined by the Receiver or as provided herein, including to the exclusion of the Borrowers and Additional Guarantors and all persons acting in concert and participation with the same, including any construction or management company;

b.      To hire and retain and otherwise obtain the advice and assistance of such legal counsel and accounting and other professionals as may be necessary to properly discharge the Receiver's duties, with all reasonable expenses incurred in connection therewith deemed to be expenses of the Receivership (defined herein), without the permission of the Court (and to pay those professionals from the rents, revenues, and proceeds of the Collateral without further application to or order of the Court);

c.      To manage, maintain, and pursue receipt of the Collateral, in whole or in part, in the ordinary course of business, including, without limitation, the immediate termination of any existing service, brokerage, or vendor contracts without the payment of any termination penalties or fees, notwithstanding any contrary provisions contained in such contracts, and the entering into new agreements in the name of the receivership established herein ("Receivership"), as deemed necessary;

d.      To expend funds to purchase merchandise, materials, supplies, and services as the Receiver deems necessary and advisable, including to change any locks or install security, to assist in performing its duties hereunder and to pay therefore the ordinary and usual rates and prices;

e.      To demand, collect, audit, inventory, and receive all revenue, rentals, including common area maintenance expenses or the equivalent, or income, if any, derived from the Collateral, or any part thereof;

9

f.      To make, enforce, modify, negotiate, and enter into such leases of the Collateral as the Receiver may reasonably deem appropriate in connection with the discharge of the Receiver's duties; provided, however, no new lease executed by Receiver will exceed one year in duration unless authorized by the Lender, in Lender's sole discretion;

g.      To bring and prosecute all proper actions for the (i) collection, recovery, and marshalling of the Collateral; (ii) protection of the Collateral; (iii) possession of the Collateral; or (iv) any other action reasonably necessary to manage, maintain, or operate the Collateral;

h.      To employ any person or firm to collect, manage, lease, maintain, or operate the Collateral;

i.      To apply for, obtain, renew, and, as necessary, to prevent the loss of all trademarks, copyrights, patents, licenses, permits, and entitlements required for the preservation or operation of the Collateral or issued in connection therewith;

j.      To hire, employ, and retain certified public accountants, appraisers, investigators, consultants, and any other personnel or employees which the Receiver deems necessary to assist in the discharge of its duties;

k.      To confirm that the Collateral is adequately insured and, if necessary, to disburse funds for the maintenance of insurance for the Collateral in amounts the Receiver deems fit or proper and to cause all policies presently existing or hereafter acquired to be amended by adding the Lender or Lender's successors or assigns, the Receiver, and/or the Receivership as additional insureds, as the Receiver deems necessary;

l.      To pay and discharge out of Receivership funds all expenses of the Receivership and the costs and expenses of operation and maintenance of the Collateral, including all taxes, governmental assessments, and charges in the nature thereof lawfully imposed upon the Collateral to the extent that the funds in Receivership are sufficient to discharge such taxes, assessments, and charges, provided, however, that the risk or obligation so incurred shall be the risk or obligation solely of the Receivership, and not the Receiver or Lender personally or in their corporate capacity;

m.      To advance funds to keep current or discharge any liens encumbering the Collateral that are senior to, or threaten to prime or become senior to, any lien or secured interest of the Lender, the Receiver being permitted to address any such liens or mechanics' liens with the Court, including with recommendations as to settlement, if any;

n.      To apply for, obtain, and pay any reasonable fees for any lawful license, permit, certificate, or other governmental approval relating to the Collateral or the operation thereof, confirm the existence of and, to the extent permitted by law, exercise the privileges of any existing license or permit or certificate or the operation thereof, and do all things necessary to protect and maintain such licenses, permits, certificates and approvals;

10

        o.      To borrow such amounts as may be necessary to satisfy the costs and expenses of the Receivership, to the extent that the Collateral is insufficient to satisfy such costs and expenses, evidenced by one or more Receivership Certificates (which the Receiver is authorized to execute), at an interest rate at or up to 14.83%, which Receiver's Certificates will be a lien and security interest of the Lender or third-party lender and a preference claim upon the Collateral. In the event the Lender advances funds, including as stated herein, the funds advanced by the Lender will be considered advances that thereby increase the outstanding Indebtedness due to the Lender under the Loan Documents and the Forbearance Agreement, with the Lender maintaining its first-priority, perfected, secured status, in all Collateral, for any and all amounts the Lender has advanced at any time including but not limited to before and during the Receivership, including notwithstanding C.R.S. § 38-39-106 *et seq.* to the extent applicable. To the extent necessary, in the event the Lender advances any funds, including as stated herein, the funds advanced by the Lender will be considered to have occurred under a revolving credit arrangement for purposes of C.R.S. § 38-39-106(1) and (3);

        p.      To open, transfer, and change all bank accounts and trade accounts and deposit all sums received by the Receiver in a financial institution insured by the federal government, including at the Lender, in the name of the Receiver or Receivership;

        q.      To present for payment any checks, money orders, and other forms of payment made payable to the Collateral, which constitute or are derived from the Collateral, endorse the same and collect the proceeds thereof, such proceeds to be used and maintained as elsewhere provided herein;

        r.      To prepare monthly profit/loss statements and balance sheets pertaining to the Collateral and, on or before the 15th day of the following month, mail such statements to the Lender, Borrowers, and Additional Guarantors, and file the same with this Court;

        s.      To challenge, in appropriate proceedings, any tax assessment or valuation of the Collateral, and have existing appeals transferred to the Receiver;

        t.      To market, advertise, list, and/or sell in a commercially reasonable manner any or all of the Collateral, including any real estate or real property, without further order of the Court, the Receiver being empowered without further order of the Court and with all necessary powers (e.g., sign any necessary deeds, bills of sale, or ancillary documents) to close on any such sale subject to both: (i) any sale price compensating all commercially reasonable closing costs; and (ii) the Lender's prior, express approval, in Lender's sole discretion, of the sale;

        u.      To prepare and file reports as required by law; and

        v.      To do such other things as may be necessary or incidental to the foregoing specific powers, directions, and general authorities.

      22.      All financial institutions, credit card processors, insurance agents, or underwriters, utility providers, vendors, suppliers, tradesmen, materialmen, service providers, franchisors,

taxing agencies, licensing agencies, lessees, licensees, tenants, residents or users of the Collateral, and all government agencies and departments are hereby ordered to take direction from the Receiver as it relates to the Collateral, to not cancel any existing leases, licenses, or policies of insurance covering any part or all of the Collateral, to surrender any and all funds held on deposit or apply said funds as directed by the Receiver, and to add the Receiver and other parties designated by the Receiver as designated above as a named insured to any insurance policies in effect.

23. The Receiver is authorized to apply the rents, revenues, income, issues, and profit collected by the Receiver in connection with the management and operation of the Collateral: first, to the Receiver's compensation as ordered above; second, to the other costs and expenses of the Receivership, including any management fees, attorney's fees, and other out-of-pocket expenses incurred by the Receiver in connection with the Receivership; third, to the costs of operating, maintaining, and repairing the Collateral; fourth, to payment of expenses of the Collateral, including but not limited to payment of real and personal property taxes, insurance, water, and sanitation bills and operating expenses; fifth, the Receiver will make principal and interest payments toward any loans that are secured by a lien on the Collateral, in the order of their priority and whenever sufficient funds are available for that purpose, with Lender being the first-priority, perfected, secured creditor in the Collateral as of the date of entry of this Order Appointing Receiver; and sixth, to a fund to be held by the Receiver in an interest-bearing account, pending further order of this Court.

24. Borrowers and Additional Guarantors, along with their managers, members, directors, officers, affiliates, and principals, their agents, or any other third parties in possession of any documents or other information necessary for the Receiver to carry out its duties are ordered to deliver immediately over to the Receiver or its agents all of the Receivership property now in his, her, or its possession, and any Receivership property received after the date of this Order Appointing Receiver, endorsed to the Receiver when necessary, and to continue to deliver immediately to the Receiver any such property received at any time in the future and to permit the Receiver to carry out his or her duties under this Order Appointing Receiver without interference. Upon request or when deemed necessary, Borrowers and Additional Guarantors, along with their managers, members, directors, officers, affiliates, and principals, and their agents, must explain the operation, maintenance, and management of the Collateral and cooperate with the Receiver in carrying out the Receiver's duties under this Order Appointing Receiver.

25. Except as may be expressly authorized by this Court after notice and hearing, the Borrowers and Additional Guarantors, along with their managers, members, directors, officers, affiliates, and principals, and their agents, are enjoined from:

    a. Collecting any revenues from the Collateral or withdrawing funds from any bank or other depository account relating to the Collateral;

    b. Terminating, or causing to be terminated, any license, permit, lease, contract, or agreement relating to the Collateral; or

      c.      Otherwise interfering with the operation of the Collateral or the Receiver's discharge of his or her duties under this Order Appointing Receiver.

26.     Nothing contained in this Order Appointing Receiver will be construed as interfering with or invalidating any lawful lien or claim by any person or entity.

27.     Any debts, liabilities, or obligations incurred by the Receiver in the course of this Receivership, including the operation or management of the Collateral, will be the debt, liability, and obligation of the Receivership only and not of the Receiver, Lender, or any employee or agent personally of the Receiver or Lender.

28.     In the event that a cure of any foreclosure of any real property that is subject to this Receivership is tendered, or a foreclosure sale of any real property is held and the real property is redeemed, the redemption or cure amount will include costs of this Receivership, including, without limitation, all Receiver's fees, expenses of preserving and protecting the real property, and reasonable attorney's fees, all funds advanced by the Lender to the Receiver for the purposes permitted by this Order Appointing Receiver, plus all other expenses incurred by the Receiver in the care and maintenance of the real property, including the payment of taxes, insurance, utility costs, and such other expenses as are necessary.

29.     Sheriff's assistance to enforce the terms of this Order Appointing Receiver in the form of peacekeeping duties is authorized by this Order Appointing Receiver.

30.     All real and personal property lessors with equipment, personal property, or fixtures associated with the Collateral are enjoined by this Order Appointing Receiver, for a period not to exceed thirty (30) days from entry of this Order Appointing Receiver, from seizing, or preventing the Receiver from taking possession of, the Collateral or any portion of the Collateral. Delivery of a copy of this Order Appointing Receiver on any such lessor will serve as formal notice of this Order Appointing Receiver and the lessors' obligations under this paragraph.

31.     All general unsecured creditors and/or judgment creditors of the Borrowers and/or the Additional Guarantors are enjoined by this Order Appointing Receiver from seizing, or preventing the Receiver from taking possession of, the Collateral or any portion of the Collateral. For the avoidance of doubt, this Order Appointing Receiver enjoins the commencement, continuation, or enforcement of any action or judgment by a general unsecured creditor and/or judgment creditor against the Borrowers, Additional Guarantors, or the Collateral. Delivery of a copy of this Order Appointing Receiver on any such general unsecured creditor and/or judgment creditor will serve as formal notice of this Order Appointing Receiver, as well as the general unsecured creditors' and/or judgment creditors' obligations under this paragraph.

32.     All who are acting, or have acted, on behalf of the Receiver at the request of the Receiver, are protected and privileged with the same protections of this Court as the Receiver has.

CORE/3500155.0064/194630277.3

33.     The Receiver must serve any request for relief or approval of any action required by this Order Appointing Receiver on the Lender, its counsel, and any other party filing an entry of appearance in this proceeding. The Court may grant any such relief requested by the Receiver, without any further notice of hearing, unless an objection to the requested relief is filed with the Court and served on the Receiver, its counsel, if any, and counsel for the Lender within fifteen (15) days after filing or service, whichever is later, of the Receiver's request. In the event of any objection to any Receiver's proposed action requiring the Court approval under this Order Appointing Receiver, then the Court will promptly hold a hearing on the objection upon at least three (3) days' prior written notice to all objecting parties.

34.     Any notice required by this Order Appointing Receiver will be deemed served on the date it is deposited in the United States mail, first class postage pre-paid, to counsel of record for any party, or directly to any party not represented by counsel, and any computation of time for purposes of this Order Appointing Receiver will be governed by the provisions of C.R.C.P. 6.

35.     The Receiver will continue in possession of the Collateral and the Receivership until discharged by the Court. The Receiver will endeavor to wind up the Receivership expeditiously in cooperation with Lender or otherwise at the direction of the Court. If no objections to the final report and motion for discharge have been filed with the Court and delivered by first class mail to the Receiver and other parties having entered their appearance in this proceeding to such address as is reflected in the Court records within fifteen (15) days after the final report and motion for discharge are filed with the Court, the Court will accept the final report and enter an order terminating the Receivership and discharging and releasing the Receiver and any other party reasonably seeking discharge and release. The Receiver's bond will be dismissed following the approval of the final report and entry of the discharge order.

36.     Within five (5) business days of the date of this Order Appointing Receiver, the Receiver shall file with this Court an executed oath swearing to perform the Receiver's duties faithfully and a bond in the amount of $500.00, but the Receiver's ability to act under this order shall not be delayed thereby.

37.     In the event that a bankruptcy case affecting the Collateral in any way is filed during the pendency of this Receivership, Lender must give notice of same to this Court, to all reasonably known parties, and to the Receiver within twenty-four (24) hours of Lender's receipt of notice of the bankruptcy filing. Upon receipt of notice that a bankruptcy has been filed that includes as part of the bankruptcy estate any Collateral that is the subject of this Order Appointing Receiver, the Receiver must do the following:

        a.      The Receiver must immediately contact the Lender and determine whether the Lender intends to move in the Bankruptcy Court for an order for relief from the Receiver's obligation to turn over the property (11 U.S.C. §543).

        b.      If the Lender indicates no intention to make such a motion, then the Receiver must immediately turn over the applicable Collateral to either the trustee in bankruptcy,

14

if one has been appointed, or if not, then to the debtor in possession, and otherwise comply with 11 U.S.C. § 543.

           c.     If the Lender expresses an intention to seek relief from the Receiver's obligation to turn over the Collateral, then the Receiver is authorized to remain in possession and preserve the property, in compliance with applicable law including the United States Bankruptcy Code, pending the outcome of the motion (11 U.S.C. § 543(a)).

38.    The Receiver may at any time apply to the Court for any further instructions or orders and for further powers necessary to enable the Receiver to perform its duties properly.

39.    The Receiver shall provide written notice of this Order Appointing Receiver to all reasonably known persons in possession and all reasonably known other interested persons or entities.

40.    The Receiver may do such other things as may be necessary or incidental to the foregoing specific powers, directions, and general authorities.

DATED this  16th  day of   December , 2024.

BY THE COURT

_____
District Court Judge

CORE/3500155.0064/194630277.3

**Loan Documents**

| Loan No. | Borrower(s) | Loan Type | Loan Documents |
|---|---|---|---|
| 9000056726 | (1) Eastern Colorado Seeds, LLC | PCA RLOC | (1) Amendment to Supplemental Loan Agreement, dated September 7, 2021, by and between American AgCredit, PCA and Eastern Colorado Seeds, LLC.<br><br>(2) Amendment to Promissory Note, dated September 7, 2021, by and between American AgCredit, PCA and Eastern Colorado Seeds, LLC.<br><br>(3) Second Amendment to Supplemental Loan Agreement, dated November 4, 2021, by and between American AgCredit, PCA and Eastern Colorado Seeds, LLC.<br><br>(4) Second Amendment to Promissory Note, dated November 4, 2021, by and between American AgCredit, PCA and Eastern Colorado Seeds, LLC.<br><br>(5) Third Amendment to Supplemental Loan Agreement, dated November 23, 2021, by and between American AgCredit, PCA and Eastern Colorado Seeds, LLC.<br><br>(6) Third Amendment to Promissory Note, dated November 23, 2021, by and between American AgCredit, PCA and Eastern Colorado Seeds, LLC.<br><br>(7) Supplemental Loan Agreement, dated December 27, 2021 by and between American AgCredit, PCA and Eastern Colorado Seeds, LLC.<br><br>(8) Cash Management Addendum, dated December 27, 2021 by and between American AgCredit, PCA and Eastern Colorado Seeds, LLC.<br><br>(9) Promissory Note, dated December 27, 2021 by and between American AgCredit, PCA and Eastern Colorado Seeds, LLC.<br><br>(10) Amendment to Supplemental Loan Agreement, dated May 17, 2022, by and between American AgCredit, PCA and Eastern Colorado Seeds, LLC.<br><br>(11) Amendment to Promissory Note, dated May 17, 2022 by and between American AgCredit, PCA and Eastern Colorado Seeds, LLC.<br><br>(12) Second Amendment to Supplemental Loan Agreement, dated October 5, 2023, by and between American AgCredit, PCA and Eastern Colorado Seeds, LLC.<br><br>(13) Second Amendment to Promissory Note, dated October 5, 2023 by and between American AgCredit, PCA and Eastern Colorado Seeds, LLC.<br><br>(14) Third Amendment to Supplemental Loan Agreement, dated November 27, 2023, by and between American AgCredit, PCA and Eastern Colorado Seeds, LLC. |

16

| | | | |
|---|---|---|---|
| | | | (15) Third Amendment to Promissory Note, dated November 27, 2023, by and between American AgCredit, PCA and Eastern Colorado Seeds, LLC.<br><br>(16) Fourth Amendment to Supplemental Loan Agreement, dated April 23, 2024, by and between American AgCredit, PCA and Eastern Colorado Seeds, LLC. |
| 9002065895 | (1) ECS Farms, LLC | PCA RLOC | (1) Master Loan and Membership Agreement, dated December 27, 2021, by and between American AgCredit, ACA, American AgCredit, FLCA, American AgCredit, PCA, and ECS Farms, LLC.<br><br>(2) Continuing Guaranty – Recourse, dated December 27, 2021, by and between American AgCredit, PCA and Eastern Colorado Seeds, LLC.<br><br>(3) Continuing Guaranty – Recourse, dated December 27, 2021, by and between American AgCredit, PCA and Pinnacol Holdings LLC.<br><br>(4) Continuing Guaranty – Recourse, dated December 27, 2021, by and between American AgCredit, PCA and High Plains Ag Service, Inc.<br><br>(5) Continuing Guaranty – Recourse, dated December 27, 2021, by and between American AgCredit, PCA and Clayton Russel Smith and Christine Laurine Smith.<br><br>(6) Supplemental Loan Agreement, dated December 27, 2021, by and between American AgCredit, PCA and ECS Farms, LLC.<br><br>(7) Cash Management Addendum, dated December 27, 2021, by and between American AgCredit, PCA and ECS Farms, LLC.<br><br>(8) Promissory Note, dated December 27, 2021, by and between American AgCredit, PCA and ECS Farms, LLC.<br><br>(9) Amendment to Supplemental Loan Agreement, dated May 17, 2022, by and between American AgCredit, PCA and ECS Farms, LLC.<br><br>(10) Second Amendment to Supplemental Loan Agreement, dated October 5, 2023, by and between American AgCredit, PCA and ECS Farms, LLC.<br><br>(11) Amendment to Promissory Note, dated October 5, 2023, by and between American AgCredit, PCA and ECS Farms, LLC.<br><br>(12) Third Amendment to Supplemental Loan Agreement, dated November 27, 2023, by and between American AgCredit, PCA and ECS Farms, LLC.<br><br>(13) Third [sic] Amendment to Promissory Note, dated November 27, 2023, by and between American AgCredit, PCA and ECS Farms, LLC. |

17

| | | | |
|---|---|---|---|
| | | | (14) Fourth Amendment to Supplemental Loan Agreement, dated April 23, 2024, by and between American AgCredit, PCA and ECS Farms, LLC.<br><br>(15) Covenant and Condition Rider to Master Loan and Membership Agreement Dated December 27, 2021, dated April 23, 2024, by and between American AgCredit, ACA, American AgCredit, FLCA, American AgCredit, PCA, and ECS Farms, LLC. |
| 9000057003 | (1) Eastern Colorado Seeds, LLC | PCA RLOC | (1) Supplemental Loan Agreement, dated January 24, 2020, by and between American AgCredit, PCA and Eastern Colorado Seeds, LLC.<br><br>(2) Cash Management Addendum, dated January 24, 2020, by and between American AgCredit, PCA and Eastern Colorado Seeds, LLC.<br><br>(3) Promissory Note, dated January 24, 2020, by and between American AgCredit, PCA and Eastern Colorado Seeds, LLC.<br><br>(4) Amendment to Supplemental Loan Agreement, dated September 7, 2021, by and between American AgCredit, PCA and Eastern Colorado Seeds, LLC.<br><br>(5) Amendment to Promissory Note, dated September 7, 2021, by and between American AgCredit, PCA and Eastern Colorado Seeds, LLC.<br><br>(6) Second Amendment to Supplemental Loan Agreement, dated November 4, 2021, by and between American AgCredit, PCA and Eastern Colorado Seeds, LLC.<br><br>(7) Second Amendment to Promissory Note, dated November 4, 2021, by and between American AgCredit, PCA and Eastern Colorado Seeds, LLC.<br><br>(8) Third Amendment to Supplemental Loan Agreement, dated November 23, 2021, by and between American AgCredit, PCA and Eastern Colorado Seeds, LLC.<br><br>(9) Third Amendment to Promissory Note, dated November 23, 2021, by and between American AgCredit, PCA and Eastern Colorado Seeds, LLC.<br><br>(10) Supplemental Loan Agreement, dated December 27, 2021, by and between American AgCredit, PCA and Eastern Colorado Seeds, LLC.<br><br>(11) Cash Management Addendum, dated December 27, 2021, by and between American AgCredit, PCA and Eastern Colorado Seeds, LLC.<br><br>(12) Promissory Note, dated December 27, 2021, by and between American AgCredit, PCA and Eastern Colorado Seeds, LLC.<br><br>(13) Amendment to Supplemental Loan Agreement, dated May 17, 2022, by and between American AgCredit, PCA and Eastern Colorado Seeds, LLC. |

18

| | | | |
|---|---|---|---|
| | | | (14) Second Amendment to Supplemental Loan Agreement, dated October 5, 2023, by and between American AgCredit, PCA and Eastern Colorado Seeds, LLC. |
| | | | (15) Amendment to Promissory Note, dated October 5, 2023, by and between American AgCredit, PCA and Eastern Colorado Seeds, LLC. |
| | | | (16) Third Amendment to Supplemental Loan Agreement, dated November 27, 2023, by and between American AgCredit, PCA and Eastern Colorado Seeds, LLC. |
| | | | (17) Third Amendment to Promissory Note, dated November 27, 2023, by and between American AgCredit, PCA and Eastern Colorado Seeds, LLC. |
| | | | (18) Fourth Amendment to Supplemental Loan Agreement, dated April 23, 2024, by and between American AgCredit, PCA and Eastern Colorado Seeds, LLC. |
| 9000056727 | (1) Eastern Colorado Seeds, LLC | FLCA | (1) Master Loan and Membership Agreement, dated July 5, 2018, by and between American AgCredit, ACA, American AgCredit, FLCA, American AgCredit, PCA, and Eastern Colorado Seeds, LLC. |
| | | | (2) Supplemental Loan Agreement, dated July 5, 2018, by and between American AgCredit, FLCA and Eastern Colorado Seeds, LLC. |
| | | | (3) Promissory Note, dated July 5, 2018, by and between American AgCredit, FLCA and Eastern Colorado Seeds, LLC. |
| | | | (4) Amendment to Supplemental Loan Agreement, dated March 6, 2020, by and between American AgCredit, FLCA and Eastern Colorado Seeds, LLC. |
| | | | (5) Second Amendment to Supplemental Loan Agreement, dated July 8, 2020, by and between American AgCredit, FLCA and Eastern Colorado Seeds, LLC. |
| | | | (6) Amendment to Promissory Note, dated July 8, 2020, by and between American AgCredit, FLCA and Eastern Colorado Seeds, LLC. |
| 9002073259 | (1) Clayton Russel Smith and Christine Laurine Smith | FLCA | (1) Master Loan and Membership Agreement, dated May 17, 2022, by and between American AgCredit, ACA, American AgCredit, FLCA, American AgCredit, PCA, and Clayton Russel Smith and Christine Laurine Smith. |
| | | | (2) Supplemental Loan Agreement, dated May 17, 2022, by and between American AgCredit, FLCA, and Clayton Russel Smith and Christine Laurine Smith. |
| | | | (3) Promissory Note, dated May 17, 2022, by and between American AgCredit, FLCA, and Clayton Russel Smith and Christine Laurine Smith. |

CORE/3500155.0064/194630277.3

| | | | |
|---|---|---|---|
| | | | (4) Continuing Guaranty – Recourse, dated May 17, 2022, by and between American AgCredit, FLCA, ECS Farms, LLC, and High Plains Ag Service, Inc.<br><br>(5) Continuing Guaranty – Recourse, dated May 17, 2022, by and between American AgCredit, FLCA, and Eastern Colorado Seeds, LLC.<br><br>(6) Continuing Guaranty – Recourse, dated May 17, 2022, by and between American AgCredit, FLCA, and Pinnacol Holdings LLC. |
| 900006488 | (1) Eastern Colorado Seeds, LLC | Lease | (1) Customer Application, of Eastern Colorado Seeds, LLC, dated May 20, 2019.<br><br>(2) Lease Agreement, dated May 13, 2019, by and between Farm Credit Leasing Services Corporation and Eastern Colorado Seeds, LLC.<br><br>(3) Guaranty, dated May 13, 2019, by and between Farm Credit Leasing Services Corporation, Pinnacol Holdings LLC, High Plains Ag Service, Inc., Clayton Russel Smith, and Christine Laurine Smith.<br><br>(4) Schedule A, dated May 20, 2019.<br><br>(5) Delivery and Acceptance, dated May 17, 2019.<br><br>(6) Bill of Sale, dated May 20, 2019.<br><br>(7) State of Colorado Certificate of Title, with the owner of Eastern Colorado Seeds LLC.<br><br>(8) Loan Transaction Certificate and Non-Recourse Promissory Note, dated June 3, 2019, between Farm Credit Leasing Services Corporation and CoBank, ACB.<br><br>(9) Loan Transaction Certificate and Non-Recourse Promissory Note Amendment, dated July 20, 2020, between Farm Credit Leasing Services Corporation and CoBank, ACB.<br><br>(10) COVID-19 / Coronavirus Pandemic Modification Request, dated July 1, 2020, between Eastern Colorado Seeds, LLC.<br><br>(11) Lease Change Acknowledgment, dated July 8, 2020, by and between Farm Credit Leasing Services Corporation and Eastern Colorado Seeds, LLC, Pinnacol Holdings LLC, High Plains Ag Service, Inc., Clayton Russel Smith, and Christine Laurine Smith. |
| 9002101707 | (1) Eastern Colorado Seeds, LLC | PCA LOC | (1) Supplemental Loan Agreement, dated April 23, 2024, by and between American AgCredit, PCA, and Eastern Colorado Seeds, LLC.<br><br>(2) Promissory Note, dated April 23, 2024, by and between American AgCredit, PCA and Eastern Colorado Seeds, LLC. |

20

| | | | |
|---|---|---|---|
| | | | (3) Continuing Guaranty – Recourse, dated April 23, 2024, by and between American AgCredit, PCA, Clayton Russel Smith, and Christine Laurine Smith.<br><br>(4) Deed of Trust, Security Agreement, Assignment of Rents and Fixture Filing, dated April 23, 2024, by and between American AgCredit, PCA, Eastern Colorado Seeds, LLC, Clayton R. Smith, and Christine L. Smith.<br><br>(5) Modification and Supplement to Deed of Trust and Notice of Additional Advance, dated April 23, 2024, by and between American AgCredit, PCA and Eastern Colorado Seeds, LLC.<br><br>(6) Modification and Supplement to Mortgage and Notice of Additional Advance, dated April 23, 2024, by and between American AgCredit, PCA and Eastern Colorado Seeds, LLC.<br><br>(7) Amended Deed of Trust, dated April 23, 2024, by and between American AgCredit, PCA and Pinnacol Holdings LLC.<br><br>(8) Covenant and Condition Rider to Master Loan and Membership Agreement Dated July 5, 2018, dated April 23, 2024, by and between American AgCredit, ACA, American AgCredit, FLCA, American AgCredit, PCA, and Eastern Colorado Seeds, LLC. |
| Various Loans | (1) Various Borrowers | Deeds of Trust | (1) Deed of Trust, Security Agreement, Assignment of Rents and Fixture Filing, dated July 5, 2018, by and between American AgCredit, PCA and Eastern Colorado Seeds, LLC.<br><br>(2) Deed of Trust, dated July 5, 2018, by and between American AgCredit, PCA and Pinnacol Holdings LLC.<br><br>(3) Modification and Supplement to Mortgage and Notice of Additional Advance, dated April 15, 2019, by and between American AgCredit, PCA and Eastern Colorado Seeds, LLC.<br><br>(4) Mortgage, Security Agreement, Assignment of Rents and Fixture Filing, dated July 5, 2018, by and between American AgCredit, PCA and Eastern Colorado Seeds, LLC.<br><br>(5) Amended Deed of Trust, dated April 15, 2019, by and between American AgCredit, PCA and Pinnacol Holdings LLC.<br><br>(6) Modification and Supplement to Deed of Trust and Notice of Additional Advance, dated April 15, 2019, by and between American AgCredit, PCA and Eastern Colorado Seeds, LLC.<br><br>(7) Modification and Supplement to Deed of Trust and Notice of Additional Advance, dated July 18, 2019, by and between American AgCredit, PCA and Eastern Colorado Seeds, LLC.<br><br>(8) Modification and Supplement to Deed of Trust and Notice of Additional Advance, dated November 25, 2019, by and between American AgCredit, PCA and Eastern Colorado Seeds, LLC. |

21

|  |  |  | (9) Modification and Supplement to Mortgage and Notice of Additional Advance, dated January 24, 2020, by and between American AgCredit, PCA and Eastern Colorado Seeds, LLC. |
|  |  |  | (10) Modification and Supplement to Deed of Trust and Notice of Additional Advance, dated January 24, 2020, by and between American AgCredit, PCA and Eastern Colorado Seeds, LLC. |
|  |  |  | (11) Modification and Supplement to Deed of Trust and Notice of Additional Advance, dated September 7, 2021, by and between American AgCredit, PCA and Eastern Colorado Seeds, LLC. |
|  |  |  | (12) Modification and Supplement to Deed of Trust and Notice of Additional Advance, dated November 4, 2021, by and between American AgCredit, PCA and Eastern Colorado Seeds, LLC. |
|  |  |  | (13) Modification and Supplement to Deed of Trust and Notice of Additional Advance, dated November 23, 2021, by and between American AgCredit, PCA and Eastern Colorado Seeds, LLC. |
|  |  |  | (14) Modification and Supplement to Deed of Trust and Notice of Additional Advance, dated December 27, 2021, by and between American AgCredit, PCA and Eastern Colorado Seeds, LLC. |
|  |  |  | (15) Modification and Supplement to Mortgage and Notice of Additional Advance, dated December 27, 2021, by and between American AgCredit, PCA and Eastern Colorado Seeds, LLC. |
|  |  |  | (16) Amended Deed of Trust, dated December 27, 2021, by and between American AgCredit, PCA and Pinnacol Holdings LLC. |
|  |  |  | (17) Modification and Supplement to Deed of Trust and Notice of Additional Advance, dated May 17, 2022, by and between American AgCredit, PCA and Eastern Colorado Seeds, LLC. |
|  |  |  | (18) Modification and Supplement to Deed of Trust and Notice of Additional Advance, dated May 17, 2022, by and between American AgCredit, PCA and Eastern Colorado Seeds, LLC. |
|  |  |  | (19) Amended Deed of Trust, dated May 17, 2022, by and between American AgCredit, PCA and Eastern Colorado Seeds, LLC. |
|  |  |  | (20) Modification and Supplement to Deed of Trust, dated October 5, 2023, by and between American AgCredit, PCA and Eastern Colorado Seeds, LLC. |
|  |  |  | (21) Modification and Supplement to Deed of Trust, dated November 27, 2023, by and between American AgCredit, PCA and Eastern Colorado Seeds, LLC. |
|  |  |  | (22) Modification and Supplement to Deed of Trust and Notice of Additional Advance, dated April 23, 2024, by and between American AgCredit, PCA and Eastern Colorado Seeds, LLC. |

CORE/3500155.0064/194630277.3

| | | | |
|---|---|---|---|
| | | | (23) Modification and Supplement to Mortgage and Notice of Additional Advance, dated April 23, 2024, by and between American AgCredit, PCA and Eastern Colorado Seeds, LLC. |
| | | | (24) Deed of Trust, Security Agreement, Assignment of Rents and Fixture Filing, dated April 23, 2024, by and between American AgCredit, PCA, Eastern Colorado Seeds, LLC, Clayton R. Smith, and Christine L. Smith. |
| | | | (25) Deed of Trust, Security Agreement, Assignment of Rents and Fixture Filing, dated July 5, 2018, by and between American AgCredit, FLCA and Eastern Colorado Seeds, LLC. |
| | | | (26) Lease Affidavit, dated July 5, 2018, by and between American AgCredit FLCA and Eastern Colorado Seeds, LLC. |
| | | | (27) Lease Affidavit, dated July 5, 2018, by and between American AgCredit FLCA and Eastern Colorado Seeds, LLC. |
| | | | (28) Mortgage, Security Agreement, Assignment of Rents and Fixture Filing, dated July 5, 2018, by and between American AgCredit, FLCA and Eastern Colorado Seeds, LLC. |
| | | | (29) Deed of Trust, dated July 5, 2018, by and between American AgCredit, FLCA and Pinnacol Holdings LLC. |
| | | | (30) Deed of Trust, Security Agreement, Assignment of Rents and Fixture Filing, dated May 17, 2022, by and between American AgCredit, FLCA, Eastern Colorado Seeds, LLC, Clayton R. Smith, and Christine L. Smith. |
| | | | (31) Lease Affidavit, dated May 17, 2022, by and between American AgCredit FLCA and Eastern Colorado Seeds, LLC. |
| | | | (32) Amended Deed of Trust, dated May 17, 2022, by and between American AgCredit FLCA and Pinnacol Holdings LLC. |
| | | | (33) Modification and Supplement to Mortgage and Notice of Additional Advance, dated May 17, 2022, by and between American AgCredit, FLCA and Eastern Colorado Seeds, LLC. |
| Various Loans | Various Borrowers | Security Agreement | (1) Security Agreement, dated July 5, 2018, by and between American AgCredit, PCA, Eastern Colorado Seeds, LLC, Pinnacol Holdings LLC, and High Plains Ag Service, Inc. |
| Various Loans | Various Borrowers | UCCs | (1) UCC Financing Statement in Colorado, dated July 17, 2018, by and between American AgCredit, FLCA and Eastern Colorado Seeds, LLC, with Amendment filed April 11, 2019, with two Amendments filed September 8, 2020 adding Pinnacol Holdings LLC and High Plains Ag Services [sic], Inc. |
| | | | (2) UCC Financing Statement in Colorado, dated July 17, 2018, by and between American AgCredit, PCA and Eastern Colorado Seeds, LLC, with Amendment filed April 11, 2019, with Amendment filed January 29, 2020 adding Pinnacol Holdings LLC and High Plains Ag Services |

23

| | | | |
|---|---|---|---|
| | | | [sic], Inc., with Amendment filed September 8, 2020 adding High Plains Ag Services [sic], Inc., with Amendment filed January 3, 2022 adding ECS Farms, LLC, with a Continuation filed January 27, 2023, with an Effective Financing Statement filed July 3, 2024.<br><br>(3) UCC Financing Statement in Colorado, dated May 26, 2022, by and between American AgCredit, FLCA, Eastern Colorado Seeds, LLC, Clayton R. Smith, and Christine Laurine Smith.<br><br>(4) UCC Financing Statement in New Mexico, dated July 17, 2018, by and between American AgCredit, FLCA and Eastern Colorado Seeds, LLC, with Amendment filed April 11, 2019, with Amendment filed September 8, 2020 adding High Plains Ag Services [sic], Inc., with Amendment filed September 8, 2020 adding Pinnacol Holdings LLC.<br><br>(5) UCC Financing Statement in New Mexico, dated July 17, 2018, by and between American AgCredit, PCA and Eastern Colorado Seeds, LLC, with Amendment filed April 11, 2019, with Amendment filed September 8, 2020 adding High Plains Ag Services [sic], Inc., with Amendment filed September 8, 2020 adding Pinnacol Holdings LLC.<br><br>(6) UCC Financing Statement in Texas, dated July 17, 2018, by and between American AgCredit, FLCA and Eastern Colorado Seeds, LLC, with Amendment filed April 11, 2019, with Amendment filed September 8, 2020 adding High Plains Ag Services [sic], Inc., with Amendment filed September 8, 2020 adding Pinnacol Holdings LLC.<br><br>(7) UCC Financing Statement in Texas, dated July 17, 2018, by and between American AgCredit, PCA and Eastern Colorado Seeds, LLC, with Amendment filed April 11, 2019, with Amendment filed September 8, 2020 adding High Plains Ag Services [sic], Inc., with Amendment filed September 8, 2020 adding Pinnacol Holdings LLC. |
| Various Loans | Various Borrowers | Additional Guaranties | (1) Continuing Guaranty – Recourse, dated July 5, 2018, by and between American AgCredit, FLCA, Clayton Russel Smith, and Christine Laurine Smith.<br><br>(2) Continuing Guaranty – Recourse, dated July 5, 2018, by and between American AgCredit, PCA and High Plains Ag Service, Inc.<br><br>(3) Continuing Guaranty – Recourse, dated July 5, 2018, by and between American AgCredit, FLCA and Pinnacol Holdings LLC.<br><br>(4) Continuing Guaranty – Recourse, dated July 5, 2018, by and between American AgCredit, PCA and Pinnacol Holdings LLC.<br><br>(5) Continuing Guaranty – Recourse, dated July 5, 2018, by and between American AgCredit, PCA, Clayton Russel Smith, and Christine Laurine Smith.<br><br>(6) Continuing Guaranty – Recourse, dated December 27, 2021, by and between American AgCredit, FLCA and ECS Farms, LLC. |

24

| | | | (7) Continuing Guaranty – Recourse, dated December 27, 2021, by and between American AgCredit, PCA, ECS Farms, LLC, and High Plains Ag Service, Inc. <br><br> (8) Continuing Guaranty – Recourse, dated December 27, 2021, by and between American AgCredit, PCA and Pinnacol Holdings LLC. <br><br> (9) Continuing Guaranty – Recourse, dated December 27, 2021, by and between American AgCredit, PCA, Clayton Russel Smith, and Christine Laurine Smith. |
|---|---|---|---|
| Various Loans | Various Borrowers | Numerous Certificates of Title on Vehicles | |
| Forbearance Agreement | All Borrowers | N/A | (1) Forbearance Agreement executed September 4, 2024, by and between American AgCredit, FLCA, American AgCredit, PCA, Eastern Colorado Seeds, LLC, ECS Farms, LLC, Clayton Russel Smith, Christine Laurine Smith, Pinnacol Holdings LLC, and High Plains Ag Service, Inc. |

25