```
 1                   UNITED STATES BANKRUPTCY COURT
                         DISTRICT OF COLORADO
 2

 3   IN RE:                    .    Case No. 25-10244-JGR
                               .                  Chapter 11
 4   EASTERN COLORADO SEEDS, LLC,.
                               .
 5        Debtor.             .
                               .
 6   . . . . . . . . . . . . . .
                               .
 7   IN RE:                    .
                               .
 8   ECS FARMS, LLC            .    Jointly Administered No.
                               .                  25-10247-JGR
 9        Debtor.             .
                               .
10   . . . . . . . . . . . . . .

11
```

**TRANSCRIPT OF VIDEOCONFERENCE EXPEDITED HEARING TO CONSIDER: EASTERN COLORADO SEEDS, LLC'S MOTION FOR ENTRY OF (I) INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL; (II) FINAL ORDER AUTHORIZING USE OF CASH COLLATERAL; (III) GRANTING ADEQUATE PROTECTION; (IV) SETTING A FINAL HEARING ON USE OF CASH COLLATERAL; AND (V) GRANTING RELATED RELIEF FILED JANUARY 22, 2025 (DOC. 35) AND OBJECTION THERETO FILED BY AMERICAN AGCREDIT, FLCA AND AMERICAN AGCREDIT, PCA ON JANUARY 22, 2025 (DOC. 40); AND EASTERN COLORADO SEEDS, LLC'S MOTION FOR ENTRY OF ORDER (I) AUTHORIZING DEBTOR TO (A) PAY PREPETITION EMPLOYEE WAGES, SALARIES AND OTHER COMPENSATION AND (B) CONTINUE EMPLOYEE BENEFIT PROGRAMS; AND (III) FOR RELATED RELIEF FILED JANUARY 22, 2025 (DOC. 37).**

```
                 BEFORE THE HONORABLE JOSEPH G. ROSANIA, JR.
                     UNITED STATES BANKRUPTCY JUDGE

                     MONDAY, JANUARYY 27, 2025
                        DENVER, COLORADO


   TRANSCRIPT REQUESTED BY:     STINSON LLP
   TRANSCRIPT ORDERED ON:       JANUARY 29, 2025
   TRANSCRIPT DELIVERED ON:     FEBRUARY 4, 2025
   TRANSCRIPT PRICE:            $5.85 PER PAGE; $216.45
```

```
 1  APPEARANCES:

 2  For the Plaintiff:              Onsager Fletcher Johnson, LLC
                                    By:  Andrew D. Johnson
 3                                  600 17th Street
                                    Suite 425N
 4                                  Denver, CO 80202
                                    (303) 512-1123
 5
                                    Allen Vellone Wolf Helfrich &
 6                                     Factor P.C.
                                    By:  Katharine S. Sender
 7                                  By:  Jordan D. Factor
                                    1600 Stout Street
 8                                  Suite 1900
                                    Denver, CO 80202
 9                                  (303) 534-4499

10  For The U.S.  Trustee:          Byron G. Rogers Federal
                                       Building
11                                  By:  Alison Goldenberg
                                    1961 Stout Street
12                                  Suite 12-200
                                    Denver, CO 80294
13                                  (303) 312-7238

14  For Creditor American           Stinson, LLP
    AgCredit, FLCA &                By:  Lucas Schneider
15  American AgCredit, PCA:         1144 15th Street
                                    Suite 2400
16                                  Denver, CO 80202
                                    (303) 376-8414
17
    For Creditor Tri-Cal            Ted Rogers
18  Superior Forage:

19  For Creditor Emergent           Cindy Kimbel
    Green Energy:
20
    For Creditor Miller Ranch:      Austin Miller, Pro Se
21                                  Connie Miller

22  For Creditor Farmland           Aaron A. Garber
    Partners, Inc.:                 2580 West Main Street
23                                  Suite 200
                                    Littleton, CO 80120
24                                  (303) 296-1999

25
```

```
 1   Appearances Continued:

 2
     Also Present:              Clayton Smith
 3                              Christine Smith
                                Chris Hoffman
 4
     Court Recorder:            Clerk's Office
 5                              U.S. Bankruptcy Court
                                721 19th Street
 6                              Denver, CO  80202

 7   Transcription Service:     AB Litigation Services
                                216 16th Street, Suite 600
 8                              Denver, CO  80202
                                (303) 296-0017
 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
     Proceedings recorded by electronic sound recording;
25   transcript produced by transcription service.
```

```
 1                    (Time Noted:  11:07 a.m.)

 2             THE COURT:  Good morning, ladies and gentlemen.

 3    This is U.S. Bankruptcy Judge Joseph G. Rosania, Jr.

 4    conducting an expedited hearing on January 27, 2025 at

 5    approximately 11:00.  We're doing this via the Zoom platform

 6    since the hearing is expedited.

 7             I think we have some parties perhaps that are not

 8    in the Metro area, and at this point, the Court is not going

 9    to receive evidence, but later in the case, if we do need to

10    receive evidence, we'll be conducting our hearings in person

11    in Courtroom B in the bankruptcy court.

12             The matter before the Court is Jointly

13    Administered Case 25-10244, Eastern Colorado Seeds, LLC,

14    which is a Chapter 11 case jointly administered with ECS

15    Farms, LLC.

16             And the specific matter before the Court is Debtor

17    filed -- well, first, I should say, the case was filed as --

18    cases were filed as Chapter 11, January 15, 2025, motion for

19    use of cash collateral, January 22nd, 2025, and motion to use

20    the cash collateral to pay wages and related benefits on the

21    same day, and a motion to expedite hearing on the same day.

22    So, we set this for an expedited hearing for this morning.

23             And I would also note there was an objection by

24    American AgCredit, FLCA and another related party to the use

25    of cash collateral.
```

1            So, let's get appearances before we proceed.  Do

2  we have counsel for the main debtor, Eastern Colorado Seeds,

3  LLC?

4            MR. JOHNSON:  Good morning, Your Honor, and thank

5  you.  Andrew Johnson on behalf of Eastern Colorado Seeds,

6  LLC.  With me today is Clayton -- or at least on the screen,

7  with us today are Clayton and Christine Smith.

8            THE COURT:  Okay.  Thank you, Mr. Johnson.

9            I'm getting some feedback, so I would ask parties

10  to please put your Zoom on mute until you are called so we

11  can have -- first of all, so I can hear, and we can all hear.

12  And second, so we can have an accurate record.

13            Counsel for ECS Farms, LLC.

14            MR. FACTOR:  Good morning, Your Honor.  Jordan

15  Factor and Kate Sender for ECS Farms, LLC.

16            THE COURT:  Thank you.

17            Counsel for the United States Trustee.

18            MS. GOLDENBERG:  Yes, good morning, Your Honor.

19  Alison Goldenberg on behalf of the U.S. Trustee.

20            THE COURT:  Thank you.

21            Counsel for American -- and I'm going to shortcut

22  some of these names for now.  American AgCredit.

23            MR. SCHNEIDER:  Yes, Your Honor.  Lucas Schneider,

24  Stinson, LLC, and I'm joined by Chris Hoffman of my client,

25  American AgCredit.

1          THE COURT:  Thank you.  I think we have somebody
2    on the line for Tri-Cal Superior Forage.
3          MR. ROGERS:  Yes.  My name is Ted Rogers.  I'm the
4    president of Tri-Cal Superior Forage.
5          THE COURT:  Do we have a representative of
6    Emergent Green?
7          MS. KIMBEL:  Yes.  This is Cindy Kimbel.
8          THE COURT:  Thank you.
9          And again, I'm shortcutting these names just
10   because it's an expedited hearing.  We're all new to this
11   bankruptcy case, and as long as we give people a chance to
12   enter an appearance, and then, of course, listen, or watch
13   the hearing.
14         And then I think we have somebody from Miller
15   Ranch.
16         MR. MILLER:  Yes.  I am Austin Miller.  Connie
17   Miller is on here as well, representing Miller Ranch.
18         THE COURT:  Okay.  Thank you.
19         Is there anybody else that I missed that would
20   like to enter their appearance on the record so we could put
21   it in the minute order?
22         MR. GARBER:  Yes, Your Honor.  Aaron Garber for
23   Farmland Partners, Inc.  And I apologize for my attire.  I
24   was just hired an hour ago, so I didn't know I'd be
25   appearing.  But I'm most likely just going to put myself on

1   mute, turn off the video.

2          THE COURT:  Okay.  Thank you.  You mean you don't

3   have a shirt and tie in your closet in your office?

4          Okay.  Anybody else?

5      (No audible response)

6          THE COURT:  Okay.  Well, as I indicated, there are

7   two motions before the Court on an expedited basis, motion to

8   use cash collateral and motion to pay employee wages and

9   related benefits.  And there was an objection, so I'll turn

10  the floor over to Mr. Johnson first to see where we are.

11  This is an interim hearing under the Bankruptcy Code

12  Bankruptcy Rules.  The objection date to the motions is,

13  especially the motion to use cash collateral, is February

14  6th.  So, before we leave today, we'll be scheduling a final

15  hearing on the motion to use cash collateral after that date

16  if we need it.

17          So, Mr. Johnson, please proceed.

18          MR. JOHNSON:  Thank you, Your Honor, and good

19  morning again.

20          Just a couple housekeeping matters.  The Court

21  will see from the docket that the debtor has served,

22  consistent with Rule 4001 and Local Bankruptcy Rule 2081, the

23  appropriate motions and notices.  The certificates of service

24  for that, for the Court's reference, are Docket Number 41 and

25  Docket Number 45.

1          I will jump in, kind of, to the conclusion, Your

2    Honor.  I've had discussions both with Ms. Goldenberg of the

3    United States Trustee's Office, as well as Mr. Schneider, who

4    represents American AgCredit.  And following my discussion

5    with Mr. Schneider, I believe that there is resolution, or at

6    least some agreement/compromise on what I believe are the

7    bulk of the issues as it relates to the interim relief only.

8          What Mr. Schneider and I talked about, at the

9    appropriate time today, was going through those items to

10   reflect the discussion and proposed compromise that we --

11   that I believe can exist for the record, and then subject,

12   hopefully, to the Court's approval, the parties would

13   circulate a revised proposed interim order and provide that

14   to the Court.

15         To start at the beginning, Your Honor, Mr. Clayton

16   Smith provided a declaration.  That's attached.  It's Docket

17   Number 38-4.  If called to testify today, Mr. Smith would

18   testify consistent with his declaration.  And in short form,

19   the debtor, Eastern Colorado Seeds, which I'm going to refer

20   to as "Seeds" for this particular hearing.  Seeds needs the

21   relief requested on an interim basis to prevent immediate and

22   irreparable harm to its business.  That specific relief is

23   the interim use of cash collateral consistent with the

24   budget, which is attached to the motion to use cash

25   collateral, as well as to Mr. Smith's declaration.  And

1  second, Your Honor, is to pay prepetition wages to Seed's

2  employees.

3          With that, Your Honor, I would ask the Court if a

4  brief description of the debtor's business, the

5  interrelationship with ECS Farms, and other related entities

6  would be helpful for the Court.

7          THE COURT:  Yes, it would, Mr. Johnson.  So, take

8  your time and please proceed.

9          MR. JOHNSON:  Thank you, Your Honor.

10          Clayton Smith started Eastern Colorado Seeds a

11  little bit more than 20 years ago and has grown it from a

12  sole proprietorship to a business with 19 employees and

13  operations in three states.  Its headquarters is located in

14  Burlington, Colorado.  It has a satellite facility in Dumas,

15  Texas, and a smaller satellite facility in Clovis, New

16  Mexico.

17          Eastern Colorado Seeds, or Seeds, does its

18  business not only through Seeds, as well as through ECS

19  Farms, a non-debtor entity called Pinnacle Holdings, and Mr.

20  Clayton Smith and Ms. Christine Smith are also involved.

21          I'd like to point the Court to there is a table

22  that describes the affiliates, and it's Docket Number 38-4,

23  and it's on Page 3.  That's a part of Mr. Smith's

24  declaration, and I just wanted to identify it for the Court,

25  as well.

1      Seeds' business is generally operating as a full-

2  service distribution outfit for seeds, grain, forage, and

3  specialty seeds in the Four Corners area, and also in Texas

4  and Arizona.

5      Part of the business that is operated includes,

6  through ECF Farms, farming about 4800 acres of farmland,

7  primarily in Carson County, Colorado.  That farmland is

8  leased primarily from third party landowners to ECF Farms.

9      Mr. and Mrs. Smith also own approximately 252

10  acres of land in Burlington, Colorado.  A portion of that is

11  used by farms or growing crops, and a portion of that land

12  also houses the headquarters office and warehouse space for

13  inventory and equipment that is used in the business.

14      An important note for the Court is that ECS Farms

15  conducts the farming operation that I have described.

16  However, on a cash basis, it is Seeds that pays for the

17  expenses.  That includes paying the ground leases, paying for

18  the planting, paying for the growing, including the crop

19  input expenses, fertilizer, herbicide, pesticide, and the

20  like, as well as getting the crop out of the ground for the

21  harvesting.  In exchange for paying those expenses, Farms,

22  ECS Farms, has historically given substantially all of the

23  harvested crop to Seeds for the purpose of Seeds cleaning and

24  preparing the seeds to turn into feeds inventory.

25      In general, other than the prepayment of the

1  expenses that I described, Seeds does not pay Farms.  Farms

2  has only two sources of independent revenue.  In general,

3  that is payments on crop insurance and other government

4  benefits and subsidies available to crop growers, and for a

5  small portion of what Farms grows, it sells to third parties

6  in the form of silage and hay.

7         With that, Your Honor, the proposed budget that is

8  proposed attached to both the motion to use cash collateral

9  as well as Mr. Smith's declaration, what the Court will see

10 on there is it includes on a cash basis the expenses that I

11 described that are for the benefit, initially of Farms, in

12 the form of farm rent and other crop inputs, as well as Farms

13 has no employees.  So, Seeds is the only employer.  Seeds

14 employees perform work for the farming operation for Farms.

15        Historically, in addition to providing the crops

16 that it has grown, Farms also has generally upstreamed the

17 cash it receives from the sale of silage, hay, government

18 benefits, and crop insurance.  It has upstreamed that to

19 Seeds.  So, the budget on a cash basis includes expenses

20 necessary for the farming operation that Farms does.

21        As noted in Mr. Smith's declaration, the growing

22 crops, depending on which crop and which location, are

23 somewhere between 15 and 55 percent complete on a cost basis.

24 And that's the 4800 or so acres of farm ground.

25        One note, Your Honor.  Pinnacle Holding, LLC is a

1   non-debtor, but it is the owner of the real estate and the

2   facility that the debtor utilizes in Dumas, Texas.  It also

3   has no employees and is substantially just a holding company.

4   It is related to this case, like claim Christine Smith and

5   ECS Farms, in that the primary secured creditor, American

6   AgCredit, made loans to the various parties secured by

7   substantially, but not all, of the Seeds and its affiliate's

8   assets.

9           So, with that, Your Honor, that is the overview

10  from my perspective of the business that Seeds and its

11  affiliates operates.  And I would pause for a moment to see

12  if the Court had questions.  Otherwise, I can go to the

13  discussion that American AgCredit and I have had about the

14  proposed interim order.

15          THE COURT:  I have no questions.  Please proceed.

16          MR. JOHNSON:  Thank you, Your Honor.

17          I'm going to use Mr. Schneider's objection as my

18  template, because he very helpfully included, on Page 12 of

19  his objection in relief sought, in essence, the proposed

20  modifications and additions that American AgCredit would like

21  to see to the proposed order.

22          So, Your Honor, I'm going to go through each, kind

23  of, each one in turn and identify the Court from the debtor's

24  perspective what it is that there is at issue for today, what

25  areas in which I believe the debtor and American AgCredit

1  were unable to reach resolution, and what issues for which I

2  believe there is a compromise.

3          On the first, Your Honor, and this is Docket

4  Number 40 at Page 12, I'm starting at B, and Roman Numeral I.

5  I believe this issue, which is adequate protection payments

6  that American AgCredit requested, is solely an issue for a

7  final order.  American AgCredit did not request any payments

8  in what I anticipate to be the time period before the Court

9  would set a final hearing, but that's obviously conditional

10 on the Court's schedule and the ability to set a final

11 hearing.

12         With respect to Roman Numeral II, the replacement

13 liens.  What Mr. Schneider and I discussed is that the

14 replacement liens American AgCredit requested are not

15 objectionable with two exceptions.  One is that American

16 AgCredit had requested to be granted replacement liens over

17 the borrower's defined term and additional guarantor's

18 assets.  The discussion with American AgCredit was since the

19 other borrowers and additional guarantors were not debtors

20 for the purpose, at least, of the interim order, that the

21 replacement lien would be limited to the debtor's assets.

22         The other issue in Roman Numeral II is that

23 American AgCredit had requested a waiver of the equities of

24 the case exception of 552.  And, of course, Mr. Schneider can

25 correct me if I'm wrong, but I believe we agreed that that

1  was something that could be removed for the purpose of an

2  interim order with all parties to reserve their rights for a

3  final order.

4       With respect to Roman Numeral III, the debtor has

5  agreed to provide in an interim order a recognition of

6  American AgCredit's right to credit bid under 11 U.S.C.

7  363(k).

8       Roman Numeral IV is the first place where I

9  believe the debtor and American AgCredit have not agreed.  In

10 Roman Numeral IV, American AgCredit has requested a super

11 priority administrative expense under 11 U.S.C. Section

12 507(b) for the purpose of an interim order.  That isn't

13 something that the debtor believes is appropriate.

14      With respect to Roman Numeral V, which is, in

15 essence, Roman Numeral V and VI, the debtor and American

16 AgCredit have discussed what appropriate reporting should

17 look like, and I believe that the consensus was that for an

18 interim order a budget to actual on a weekly basis was

19 appropriate.  The ability to inspect collateral or audit was

20 appropriate on a monthly basis, and subject to additional

21 detail, a bi-weekly inventory accounting report that

22 identified what and how much and to whom sales of Seeds'

23 inventory occurred for that two-week period would be

24 appropriate.

25      Roman Numeral VII, Your Honor, gets to, in

1  essence, certain line items in the budget.  The debtor had

2  proposed a cumulative variance for expenses of 10 percent.

3  American AgCredit had requested five percent for categories

4  below $2,000, and I believe 3 percent for line item

5  categories that exceeded that threshold.  For the interim

6  period, subject to the other provisions in American

7  AgCredit's order by which the debtor can request a variance

8  in writing ahead of time, those line items, or those

9  variances, are acceptable to the debtor.

10        The debtor is also okay with including in the

11  proposed order that it will not sell, transfer, lease, or

12  encumber assets outside the ordinary course of business.

13        The last item, Your Honor, is Roman Numeral VIII,

14  by which American AgCredit requested a waiver of the ability

15  of a trustee to surcharge collateral under 11 U.S.C. 506(c).

16  And the debtor believes that that is an issue that's

17  appropriate for an interim order and that it should be

18  excluded from an interim order with the parties to reserve

19  their rights with respect to a final order.

20        So, for past collateral, Your Honor, I believe

21  that is where the debtor and American AgCredit ended up.

22        THE COURT:  Okay.  I think a good way to proceed

23  is for you just to continue on behalf of the debtor to

24  address, if we're done with the cash collateral presentation

25  at this time, to address the other motion.  But I did have

1  that objection and that particular Paragraph 12 pulled up

2  over the weekend with the hope that there would be some

3  resolution, and there is.  So, we can circle back to that

4  paragraph and the cash collateral issue that the debtor's

5  presentation at this time is complete and move into the

6  employee wage motion.

7         And then just for your presentation, one question

8  I had was, how much cash is on hand.  So, if you want to keep

9  going on the -- if you're done with cash collateral, go on on

10  the wage motion at this time.

11         MR. JOHNSON:  Thank you, Your Honor.

12         And to answer your question, I'm going to ask Mr.

13  Smith if he would text me that number.  And the reason I need

14  that information is because as the Court may have seen from

15  the various pleadings, there is a receiver in possession of

16  the business and the assets from December 18th through the

17  petition date.  So, I don't know that either I or management

18  knows the exact answer to that yet at this point.

19         And I had one other -- one other note for cash

20  collateral, and I apologize for going backwards.  It was

21  Roman Numeral VII, Section C, by which American AgCredit had

22  requested that Mr. Clayton and Ms. Christine Smith not be

23  compensated more than $8,500 per month in the aggregate for

24  any calendar month.  At least on an interim basis, Your

25  Honor, the debtor opposes that requested relief.

1        To transition, Your Honor, to the wage motion.

2   Consistent with Mr. Smith's declaration, Seeds, or Eastern

3   Colorado Seeds, employs about 19 people, some on an hourly

4   basis, some on a salaried basis.  There's a schedule attached

5   to Mr. Smith's declaration, and it is also attached to the

6   motion to pay prepetition wages that identifies by name the

7   insiders and their wages that are owed as of the petition

8   date, as well as the other employees who are not identified

9   by name and the wages that they are owed as of the petition

10  date.

11       Consistent with the motion and Mr. Smith's

12  declaration, the employees are necessary to conduct the

13  business that Seeds conducts, for Seeds is the only entity

14  that has employees for the overall business and the wages and

15  benefits identified in the schedule are below the thresholds

16  in 507(a)(4) and (5) to establish priority claims for wages

17  incurred in the 180 days prior to the petition date.

18       I would note, Your Honor, as you're looking at the

19  schedule of wages the one thing to note is that the last

20  payroll was conducted while the receiver was in place.  The

21  receiver was unwilling to pay Mr. Smith and Mrs. Smith.

22  That's why on the schedule Mr. Smith and Mrs. Smith show up

23  for a particular pay period, while none of the other salaried

24  employees do.

25       To the extent that wages are not permitted to be

1 paid on a prepetition basis, the debtor anticipates that

2 there would be immediate and irreparable harm, and it would

3 be difficult for the debtor to maintain its employees.  With

4 that, Your Honor, the debtor would request that the Court

5 enter the order allowing the payment of prepetition wages.

6           THE COURT:  Okay.  Looking at the Exhibit Doc 37-4

7 filed January 22nd, 2025, the total in this particular

8 category of wages for salaried employees and hourly employees

9 is approximately $51,000?

10           MR. JOHNSON:  Correct, Your Honor.

11           THE COURT:  Okay.  Yeah.  So, you know, I want to

12 hear from all the other parties on the line, but I guess you

13 can move on to the second component of that motion.

14           MR. JOHNSON:  Your Honor, I think the second

15 component is the ability to pay the taxes and benefits

16 associated with the wages.  Those are also identified in the

17 table, the schedule that is attached both to the motion to

18 pay prepetition wages, as well as Mr. Smith's declaration.

19           THE COURT:  Okay.  At least you -- at least you

20 filed the exhibit not sideways like I see sometimes, which is

21 good.  And also, it's large enough that it's legible.  Let me

22 just pull that up again.

23           Okay.  So, I'm looking at 37 -1.  So, that chart

24 shows both wages and benefits?

25           MR. JOHNSON:  Yes, Your Honor.  I believe it does

1  include both.  You'll see there's a column for insurance

2  employer portion, as well as 401k match.

3         THE COURT:  Okay.  Thanks for the clarification.

4  Anything else at this preliminary hearing from the debtor?

5  I'll give you a chance to respond if necessary.

6         MR. JOHNSON:  Not right now, Your Honor.  Thank

7  you.

8         THE COURT:  Okay.  I appreciate the presentation.

9  It was, you know, it appears to me to be accurate and

10  concise, which judges always appreciate.  And as I indicated,

11  I think we set this hearing Thursday of last week, so I've

12  been looking at the pleadings Friday and over the weekend.

13         Okay.  So, let me see what some other parties have

14  to say about this.  Next up, Ms. Goldenberg.

15         MS. GOLDENBERG:  Thank you, Your Honor.

16         No objection from the U.S. Trustee's Office

17  regarding the wages motion.

18         Regarding the cash collateral proposed order, the

19  U.S. Trustee would argue that there should be a carve-out for

20  a Chapter 7 trustee in case the case converts, and the U.S.

21  Trustee would rely on 11 U.S.C. 726(b), as well as the Endy

22  case at 104 F.3d 1154, that's a Ninth Circuit case, as well

23  as an Eighth Circuit case *In re Juhl Enterprises*, J-U-H-L,

24  921 F.2d 800.

25         THE COURT:  Okay.  And have you communicated this

1  position to Mr. Johnson?

2          MS. GOLDENBERG:  I was not able to because I found

3  out about the super priority lien, like, two minutes before

4  we signed on.

5          THE COURT:  Okay.  I appreciate that.  You know,

6  as we all know, bankruptcy is an extremely fast track and

7  usually the parties would like the judge to rule yesterday on

8  things.  Okay.  I noted that.  I wrote the citations down.

9  Anything further from the trustee?

10          MS. GOLDENBERG:  No, Your Honor.  Thank you.

11          THE COURT:  Okay.  Thank you, Ms. Goldenberg.

12          I guess, let's go to Mr. Schneider.  Any comments

13  that you have on anything?  The recitation of facts, the

14  motions, your objection, et cetera.  And also, you know, if

15  you want to go through the various paragraphs on Page 12 of

16  the objection, so I'm trying to take notes in red and black

17  pen so I'm understanding what's agreed to, at least at this

18  point, and then what's still in dispute.

19          So, Mr. Scheider, please proceed.

20          MR. SCHNEIDER:  Thank you, Your Honor.  I'll be

21  very brief about the background, and then just as Mr. Johnson

22  did, I'll work through each line item in the cash collateral

23  orders citing my relief and where we have consensus, or where

24  at least the two of us have consensus.

25          So, very briefly.  Since 2018, my client, American

1    AgCredit, has been the first priority, the second secured

2    creditor, of Seeds, and in that regard, my client's

3    collateral includes all cash, inventory, land, and equipment

4    of Seeds.  And that land, if you will, it includes

5    approximately 14 acres of buildings in Burlington, Colorado,

6    where the debtor's main operation is along with 1.6 acres of

7    the vacant warehouse in Clovis, New Mexico.

8              Suffice it to say, Your Honor, my client's

9    position today is that based upon current facts it is most

10   likely under secured given that my client filed a proof of

11   claim on Friday that was valued at approximately $17 million.

12             With that, we reviewed the proposed cash

13   collateral orders, and I spoke with Mr. Johnson this morning,

14   and I will turn to those to then work down through each

15   individual line item and explain where my client stands.

16             Regarding, again, Docket 40, Page 12, Subparagraph

17   B, and then Romanette i, that being adequate assurance

18   payments, Your Honor, I do understand that how and when you

19   schedule the final hearing is critical to whether adequate

20   insurance payments should be made to my client.

21             Your Honor, Mr. Hoffman from my client is joining

22   today.  If he were presented he would testify that pre

23   default the debtors, and I say that singular possessive, and

24   it's enterprise, so all entity borrowers, would be paying

25   approximately $128,090 per month in monthly payments.

1          As to adequate assurance here, reviewing the

2   debtor's budget, it shows that the projection is that at the

3   end of April of 2025 there should be net positive cash flow

4   of approximately $40,000.  With that, my client asks that

5   Your Honor, again, dependent upon when you set the final

6   hearing, consider entering an order that allows for the

7   debtor to pay -- or requires the debtor to pay rather,

8   adequate insurance payments in the amount of $20,000 per

9   month, starting with the first payment due at the end of

10  March of 2025.

11          I'll then move on to Romanette ii, and that is the

12  replacement liens.  Mr. Johnson generally explained that he

13  and I are in agreement, and I agree with him on that.  You

14  should be seeing a forthcoming order in which it is then

15  limited to only the debtor, that's singular possessive,

16  estate, not all of the borrowers and additional

17  (unintelligible), because they're not parties.  And we will

18  reserve all rights for the equities of the case exception for

19  further hearing.

20          Moving then to Romanette iii, regarding my

21  client's ability to credit bid.  Attorney Johnson was

22  correct, he and I have agreed that his client would include

23  that language in the forthcoming cash collateral.

24          Moving onto Romanette iv, the super priority

25  claim.  This is where we do have a disagreement, Your Honor.

1  My client is effectively financing this estate through the

2  deferment of payments that would be coming on an ongoing

3  basis that would amount to no less than in the prepetition

4  non-default period of $128,090 per month.  For that reason,

5  my client asks that it be granted super priority

6  administrative claim position regarding any amounts spent in

7  cash collateral by the debtor to the extent the replacement

8  liens that we've agreed upon, and that Your Honor hopefully

9  will order, do not adequately protect my client.

10        The concern from my client's perspective is that,

11  one, again, it's financing this estate going forward, and

12  two, it's possible that if cash collateral could be spent or

13  expended in some way in the future in a way that doesn't

14  result in net positive proceeds, this debtor has had cash

15  flow issues since late 2023.  And so, that's a real risk to

16  my client's cash collateral could, in fact, decline in value

17  over the course of this case.

18        So, I'll move on at this time then to Romanette v,

19  that being reporting regarding weekly cash.  Mr. Johnson was

20  correct, we have reached an agreement that his client would

21  provide prospective and current, or actual spending, as far

22  as the cash spent.

23        Pivoting slightly, then, talking about the

24  inventory reporting.  One thing I'll add to Mr. Johnson's

25  recitation is that I understand he and I also agreed that his

1    client would bi-weekly report wherefrom any inventory was

2    sold.  As Your Honor heard, there are three states where the

3    debtor has locations, so we would want that information as

4    well.

5          And then, going forward, Mr. Johnson and I spoke,

6    and we agreed to discuss one other added aspect to the bi-

7    weekly inventory reporting, that being my client seeking a

8    report of how much inventory remains on each report.  I

9    understand that may present a logistical issue for the

10   debtor.  Mr. Johnson and I plan on working through that in

11   the coming days.

12         Moving then to the budget variance.  As Mr.

13   Johnson explained, we have an agreement that for any spend of

14   2,000 or less on the debtor's budget, the variance would be 5

15   percent without the debtor having to seek any permission or

16   discuss with American AgCredit.  For any line item of spend

17   of more than $2,000 on the variance without the debtor having

18   to talk with or seek permission from American AgCredit, would

19   be 3 percent.  And then, Mr. Johnson and I are going to

20   further discuss going forward a third category of certain

21   line items of spend that the debtor anticipates needing a

22   higher variance than what American AgCredit is willing to

23   accept without there being a discussion and some level of

24   approval by American AgCredit, because that does, in fact,

25   impact its cash collateral.  So, you should be seeing more on

1    that going forward, Your Honor.

2           Then, going to 506(Court) -- or pardon me, I think

3    I jumped ahead too much.  Discussing the compensation of Mr.

4    and Mrs. Smith.

5           Your Honor, I understand this pertains more to the

6    motion for wages and that you are going to order on that

7    soon.  My understanding in reviewing both the motions is that

8    Mr. and Mrs. Smith both receive compensation on an annual

9    basis greater than $90,000 per year.  My understanding is

10   that their compensation is one of the largest expenses of the

11   debtors as far as wages going forward, and it is a large

12   expense of the debtors, period.

13          As Your Honor understands, the debtor has

14   significant cash flow issues.  My request is that the Court

15   consider reducing the amount paid to Mr. and Ms. Smith on an

16   interim basis going forward so that the debtor can get his

17   cash position, at least prior to final hearing, stabilized,

18   and then hopefully, use that cash for any inputs that Mr.

19   Johnson spoke of going forward to result in, again,

20   hopefully, a net positive income.

21          Then, moving onto a further item, that being the

22   506(c) waiver.  Your Honor, I understand that that is an

23   issue for final hearing.  I agree with Mr. Johnson on that.

24   My client reserving any and all of its rights to discuss

25   506(c) in any releases and waivers going forward, and

1    reserves that for final hearing.

2              I'm going through my list, and I believe that

3    covers everything.  And if Your Honor has any questions, I'm

4    glad to answer them at this time.

5              THE COURT:  Okay.  Thank you, Mr. Schneider.  I

6    might, but I want to hear from some of the other parties that

7    are on the Zoom call.

8              Anything from either Mr. Factor or Ms. Sender this

9    morning?

10             MR. FACTOR:  Thank you, Your Honor.  I appreciate

11   the invitation to make very brief remarks, which I will do.

12             As Your Honor heard, Farms as opposed to Seeds,

13   does not have a need for cash collateral on an interim basis

14   -- excuse me, and does not pay wages to employees, but it

15   does directly benefit from Seeds' use of cash collateral and

16   from Seeds' payment of wages.  Therefore, Farms joins in

17   Seed's requests, but does not, at this time, separately make

18   a request for use of cash collateral.

19             THE COURT:  Okay.  Thank you.

20             Let's see.  Mr. Garber, any comments on the record

21   this morning?

22             MR. GARBER:  No, Your Honor.  We'll just reserve

23   our rights for the final hearings if we decide to file

24   anything.

25             THE COURT:  Thank you.

1          Mr. Rogers?

2          MR. ROGERS:  No additional comments at this time.

3          THE COURT:  Thank you.

4          Whoever appeared for Emergent Green?

5          MS. KIMBEL:  Not at this time.

6          THE COURT:  And any for Miller Ranch?

7          MR. MILLER:  Hi.  Yes, Your Honor.  This is Austin

8    Miller.  We'd like to reserve the right later.

9    Unfortunately, our legal counsel was not able to represent us

10   today.  There was a conflict.  So, we would like to further

11   review the information and reserve the right to object at a

12   later point.

13         THE COURT:  Okay.  Thank you.  Fair enough.

14         And I think the formal objection date for the

15   motion to use cash collateral is February 6th, 2025, which is

16   next -- a week from this Thursday.  So, that'll be enough

17   time for people to object.  Entities in Federal Court have to

18   appear by counsel, just to make that comment.  Individuals

19   can appear pro se, but entities have to appear by counsel.

20         So, circling back to Mr. Johnson.  On the motion

21   to pay wages, it appears that the objection is to the amount

22   of -- I just want to make sure that I got this right.  And

23   luckily, in any event, the objection by I'll call it American

24   Ag, on the only objection on the motion to pay wages is the

25   amount of Mr. and Mrs. Smith's wages.  Is that right?

1      MR. JOHNSON:  Your Honor, I believe -- this is

2  Andrew Johnson for the debtor.  I believe that that was all

3  that I heard.

4      THE COURT:  Okay.  And then, on the cash

5  collateral issue, the objection -- let's see, I have this

6  written.  Okay.  So, number one, adequate protection

7  payments, the amount of payments, I will reserve for a final

8  hearing.  The parties had negotiated a resolution of Number 2

9  in the objection.  I'm referring to Page 12 of the American

10  Ag's objection.

11      The parties negotiated a resolution to Paragraph

12  3, the credit bid.

13      Paragraph 4, super priority administrative

14  expenses and dispute.

15      The reporting issues raised Paragraphs 5 and 6

16  appear to be resolved.

17      Limit on compensation to dismiss is Paragraph 7.

18  That is a live issue.  The waiver of the right to surcharge

19  is a live issue.

20      And then, the United States Trustee has raised an

21  additional issue, carve-out for Chapter 7 trustee.

22  Mr. Johnson, I don't know if you heard this before the

23  hearing, the trustee, U.S. Trustee's position.  Does the

24  debtor have any position this morning on the carve-out?

25      MR. JOHNSON:  Your Honor, Ms. Goldenberg and I did

1    not have a chance to discuss that before the hearing.  In

2    concept, I think that the debtor would be okay with it.  I

3    think the issue comes up -- I didn't hear Ms. Goldenberg say

4    an amount, and that's an issue in which I anticipate that Mr.

5    Schneider will also, of course, want to weigh in.

6            THE COURT:  Okay.  So, you know, I will proceed as

7    follows.  I note the objection date's February 6th, and with

8    respect to a final hearing, unfortunately the week of

9    February 10, I have a three-day trial Tuesday, Wednesday,

10   Thursday.  And in fact, I mistakenly double set a

11   confirmation hearing with a dischargeability trial the same

12   week.  So, suffice to say, I wouldn't be able to have a

13   hearing that week.

14           The week of the 17th works.  Monday, the 17th is

15   President's Day.  And I have some hearings on the 19th, but I

16   could have a final hearing on this case on the motion to use

17   cash collateral on Thursday, February 20.  I would set it at

18   9:30, in person, in Courtroom B.  So, kind of working

19   backwards.  Does that date and time work for the debtors?

20           MR. JOHNSON:  Your Honor, I'm looking for a nod or

21   a head shake from Mr. Smith.  He's nodding.   That works for

22   me.  And I see Mr. Factor nodding, as well.

23           THE COURT:  And Mr. Schneider?

24           MR. SCHNEIDER:  Yes, Your Honor, that works well.

25   February 20th at 9:30 works well.

1          THE COURT:  Okay.  Let me write that down here.

2    So 9:30, we'll do it in person.  And then, you know,

3    sometimes the cash collateral issues, that is like three

4    weeks out, sometimes they get resolved.  If they do, then,

5    you know, a final order can be presented, and we can either

6    have a short hearing or just vacate the hearing.  But a lot

7    of issues have been raised in objection to the motion to use

8    cash collateral, so you never know how they're going to turn

9    out.

10          Now, in terms of what I need to rule on this

11   morning, the only thing that -- I mean, I would -- let me

12   make sure this is on.  I would reserve the issue of the

13   amount of adequate protection payments for a final hearing.

14   I would reserve -- and that's really, sort of, more of an

15   economic factual issue that's only going to develop over

16   time.  And I will tell you, you know, I think obviously 361

17   provides that debtors in Chapter 11 have to adequately

18   protect secured creditors when they're using their

19   collateral.  So, I would reserve that for a final hearing and

20   also give the parties a chance to see how things develop

21   factually and whether there can be an agreement.

22          I would certainly not upset any agreements that

23   the parties have on the numbered items that were recited into

24   the record today.

25          Super priority administrative expense.  Again, I

1  would reserve ruling on that.

2           On the adequate protection payment issue.  You

3  know, I think we need to see how that plays out in terms of

4  how the business does.

5           On the super priority administrative expense

6  issue, that's a legal issue, and hopefully, we never have to

7  go there, but I'm not prepared to rule on that today.

8           And then, we had the waiver of surcharge issue,

9  which, again, I don't see that that's something that needs to

10 be addressed at an expedited preliminary hearing on the use

11 of cash collateral.

12           And then, on the carve-out issue, you know, as I

13 figure -- you know, in fact, all these things sound

14 reasonable to me, but I'm not representing actual clients in

15 the case.  But on the carve-out issue I would say let's get

16 some time on that and let the parties discuss that.  And I'm

17 a former Chapter 7 trustee, so, of course, I recognize the

18 need for that.

19           So, it sounds like the only thing I really need to

20 rule on today, and the parties can let me know if I'm wrong,

21 is the issue of the Smith's wages.  And the way I look at

22 that -- where's my notes?  I have, in my private practice,

23 represented many Chapter 11 debtors, and I look at the amount

24 of the Smith's wages as the debtor-in-possession under the

25 Bankruptcy Code Chapter 11 is authorized to operate its

1   business.  The amount of the wages of the principals is a

2   business decision and a business management decision.  And so

3   at least so far as the motion to pay the wages goes, I would

4   approve that in the amounts requested.

5           And also, I'm certainly not an expert in the

6   business of the debtors but, you know, nothing about the

7   amount of the wages jumps out at me as unreasonable and

8   unfair, so that would be my ruling on that.

9           And just for the record, a brief recitation of

10  what we're doing here.  We're here under 11 U.S.C. Section

11  363, Paragraph A defines cash collateral.  I don't think

12  there's any dispute that proceeds from the debtor's

13  operations is cash collateral subject to American Ag's lien.

14          And Bankruptcy Code Section 362(3)(b), Subsection

15  -- there's a lot of subsections here.  All these statutes are

16  so long.  Under Subsection C2, the trustee or the debtor-in-

17  possession can't use or sell relief cash collateral without

18  consent.  We have some consent on some of the points.  On the

19  points we don't have consent the Court, after admittedly an

20  expedited notice and a hearing, will authorize the use of

21  cash collateral in accordance with the section.

22          And then Subsection C3, and also Federal Rule of

23  Bankruptcy Procedure 4001, provide that the Court may have a

24  preliminary hearing.  That's what this is.  It's an expedited

25  preliminary hearing.  I'm authorizing the use of cash

1   collateral, both as the rule states, to avoid immediate and

2   irreparable harm.  That's Rule 4001(b)(2), and also under the

3   code itself, 362(c)(3).  There's a reasonable likelihood the

4   debtor would prevail at a final hearing.

5            And I also think that the motion to use cash

6   collateral satisfies Bankruptcy Rule 4001(b)(1) on service,

7   and also (b)(1)(b) on contents, and also satisfies we have a

8   local rule on cash collateral.  So, those rules are

9   satisfied.

10           So, having considered the matter, set a final

11  evidentiary hearing in person, as soon as I could get it on

12  my docket.  I mean, yeah, the objection date's February 6th.

13  So, I have those hearings starting February 11.  That would

14  be the order of the Court.

15           And I guess I'll go around one more time to see if

16  there's any questions or anything I missed, but I expect them

17  to get a revised proposed interim order from the parties

18  shortly.  And usually, we ask that it just get filed with the

19  Court, a notice of filing a proposed interim order on cash

20  collateral.

21           I'm assuming the order on the wages is sufficient.

22  If it's not, then we'll need another revised order on that.

23           But when the debtor files this notice of proposed

24  order, that's also a representation to the Court that the

25  attached proposed order has been agreed to by parties in the

1   case, especially those who have filed an objection, like

2   American Ag, or by the U.S. Trustee, which is a party in

3   interest in Chapter 11 cases.

4           So, going back to the parties here.  Mr. Johnson,

5   anything further at this point?

6           MR. JOHNSON:  No, Your Honor.  Nothing from the

7   debtor.  Thank you.

8           THE COURT:  Thank you.

9           Ms. Goldenberg?

10          MS. GOLDENBERG:  Just one nitpicky comment on the

11  wages to Mr. and Mrs. Smith.  The total owed to Ms. Smith is

12  8,242, and the total to Mr. Smith is 8,491.  When the

13  aggregate is added to 8,500, will that be equally divided

14  amongst the two?  Because we're getting close to that

15  statutory amount if it's not divided.  Just need

16  clarification on that.

17          THE COURT:  Okay.

18          Mr. Johnson?

19          MR. JOHNSON:  I may not be following, but I

20  believe that the total for Ms. Smith is below the  507(a)(4)

21  and a five threshold, and the total for Mr. Smith is also

22  below.  So, in terms of divided, I think the answer is yes.

23  The 8242 is allocated to Ms. Smith, and 8491.57 allocated to

24  Mr. Smith.  If I'm understanding correctly.

25          THE COURT:  Ms. Goldenberg, does that answer your

1    question?

2         MS. GOLDENBERG:  No, it actually doesn't.  I'm

3    still a little confused.  So, is that including the amount

4    from Subparagraph 7C where the Claytons, Clayton and

5    Christine Smith are to be compensated an additional 8,500? Or

6    was I misinterpreting that?

7         MR. JOHNSON:  And if I can respond, Your Honor?

8         THE COURT:  Yes.

9         MR. JOHNSON:  I believe that the $8,500 in the

10   proposed order from American AgCredit in Roman Numeral VII C

11   was proposed as a limit.  And as I understood the Court, at

12   least for the interim order, the Court was not going to

13   impose that restriction.

14        THE COURT:  That's correct.  And I also don't

15   micromanage cases, too, and that's part and parcel of my

16   order.

17        So, Ms. Goldenberg, does that answer your

18   question?

19        MS. GOLDENBERG:  Yes, it does.  Thank you.

20        THE COURT:  Okay.  Good.

21        Anything further from Mr. Schneider?

22        MR. SCHNEIDER:  Your Honor, thank you for your

23   time.  I have nothing further other than I look forward to

24   working with Mr. Johnson and Attorney Goldenberg regarding

25   the Chapter 7 trustee carve-out.  Thanks.

1          THE COURT:  Okay.  And did we do an ABI or a

2   Colorado case review one time?

3          MR. SCHNEIDER:  Yes.

4          THE COURT:  Okay.  Okay.

5          All right.  So, let's see.  I ruled on what I had

6   to rule on, which always is something I like to do at these

7   hearings.  So, we'll look forward to the proposed order.

8   We'll issue an order for the final evidentiary hearing.

9          Any problems with that order that I issue, then I

10  would ask the parties to file a formal motion to reschedule,

11  or a motion to modify, so that it's actually on the record.

12  We had a case last week where I set a hearing and then we got

13  a phone call.  Let's get everything on the record so we all

14  are on the same page.

15         So, thank you for appearing, ladies and gentlemen.

16  Look forward to working on this case and coming to a

17  successful resolution.

18         So, we'll be adjourned in these two cases this

19  morning.  Have a good day.

20              (Time Noted:  12:02 p.m.)

21                     *  *  *  *  *

22

23

24

25

1                          CERTIFICATE

2          I, RANDEL RAISON, certify that the foregoing is a

3    correct transcript from the official electronic sound

4    recording of the proceedings in the above-entitled matter, to

5    the best of my ability.

6

7

8    _____          February 4, 2025

9    Randel Raison

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25